Waldron vs. The C. & N. W. R. R Co.

## WALDRON v. THE C. & N. W. R. R. Co.

1. *JURY:* VERDICT: ISSUES SETTLED. All disputed facts are determined by the jury, when they find for the plaintiff on all the issues; and their decision upon such facts should stand, unless there is insufficient evidence to warrant their finding.

2. *RAILROAD COMPANY:* COMMON CARRIER: LIABILITY. A railroad company as a carrier of passengers, is bound, unless there is reasonable grounds for refusal, to take all persons who apply for passage, and their baggage, not exceeding the number of pounds prescribed by the rules of the company, and to take the same when offered for transportation by the accompanying passenger.

3. ———: ———: ———. Such company is responsible, when duly delivered and accepted, for the safe conveyance and delivery of such baggage and packages, to and at the point for which they are destined, unless prevented by an act of the public enemy, by act of law, or by an irresistible superhuman cause.

4. ———: ———: ———. If property is offered with the passenger, but not so packed as to assume the outward appearance of ordinary baggage, or so as to deceive or conceal its true character, it is within the scope of the agent's business and duty to decide whether the company will receive and carry it as baggage, and if so received to be forwarded, the company is liable.

5. ———: AGENT: DELIVERY. A delivery to a duly authorized agent of a common carrier, who is in the habit of receiving packages, is a sufficient delivery.

6. ———: ———; ———. Where the defense is that a delivery was made to an agent of the owner, or consignee, it must be clearly proved that the person to whom the goods were delivered as agent was duly authorized as such. The carrier is under as much obligation to deliver property to the right person as he is to deliver it in a reasonable time and at the proper place.

352     SUPREME COURT OF DAKOTA

Waldron vs. The C. & N. W. R. R. Co.

7. ———: ———: ———. If the delivery by a carrier be to the wrong person, although it be entirely by mistake, or by gross imposition, or upon a forged order, the carrier will nevertheless be responsible for the value of the goods lost.

8. *JURISDICTION:* HOW ACQUIRED: PROVISIONAL REMEDY. A court can acquire a limited jurisdiction in an action by the allowance of a provisional remedy; but jurisdiction does not become complete until the service of a summons in some of the modes prescribed by law, or by the voluntary appearance of the defendant.

9. ———: ———. VOLUNTARY APPEARANCE. A voluntary appearance by the defendant is equivalent to personal service of the summons upon him; and after such appearance the court acquires full jurisdiction for all purposes whatsoever.

10. *ATTACHMENT;* CHARACTER OF PROCESS. The attachment, under the Code, is not original process, and by it an action is not commenced, nor upon it alone can judgment be obtained. The action is commenced by summons, and the attachment is an adjunct, and can only be employed in an action already commenced.

### *Appeal from Yankton County District Court.*

ALL the facts in this case, necessary to a full understanding of the points discussed and decided, are stated in the opinion.

*Oliver Shannon,* for appellant.

The language of the act, section 157 of Justices' Code, is this:—Any "*creditor*" shall be entitled against his *debtor* to proceed; and section 158 provides for the affidavit of plaintiff as to the amount of "*indebtedness,*" etc.

The New York Code, section 227, which is the same as our section 180, and which is similar to the sections above of Justices' Code as to debtor and creditor, is confined to actions of contract involving *indebtedness* and not damages sounding in tort; for by the case of *The Atlantic Mutual Ins. Co. v. McLoon,* page 27 of 48 Barb., it is expressly decided that proceedings under attachment will not lie for negligence of a common carrier for loss of goods, because the cause of action is one sounding in damages, being in the nature of a *tort* and not *debt.*

The same principle as to unliquidated demands applies to cases in equity for amounts not ascertained by a previous

accounting. (Wait, 133; 9 Bosw., 601; 20 How., 93; 11 Abb., 345; 18 Abb., 291; for definition of *debtor*, see Civil Code § 1913 )

AUTHORITY ON AGENCY: OSTENSIBLE AGENCY.—Civil Code, §§ 1249, 1253, 1221; Wharton on Agency, §§ 43, 111, 40; Story on Agency, § 85.

TERMINATION OF AGENCY.—Civil Code, § 1262; Wharton on Agency, § 455; Story on Agency, § 84.

If the powers are special, they form the limits of authority; if general, they will be more liberally construed, according to the necessities of the occasion, and material or ordinary or reasonable cause of the transaction.

Revocation of agency takes effect as to third parties when it is made known to them; not before. (Story on Agency, §§ 470 and 473.

### ON THE QUESTION OF LUGGAGE.

Common carriers of passengers are bound to transport the ordinary baggage of their passengers; but this liability is limited to ordinary baggage, consisting of such articles of necessity or convenience as are usually carried by passengers, and does not include merchandise or other valuables not designed for any such purpose. (*Miss. Centl. R. R. Co. v. Kennedy*, 41 Miss., 671; *Cinn. & Chic. R. R. Co. v. Marcus*, 38 Ills., 219; *Smith v. Boston & Maine R. R. Co.*, 44 N. H., 325.) This last case defines " ordinary baggage " to be " articles required for the personal accommodation of the passenger upon his journey." (*Collins v. Boston & Me. R. R. Co.*, 10 Cushing, 506; *Stinson v. Conn. River R. R. Co.*, 98 Mass., 83.) In a recent case in New York the rule is laid down to be, " carriers of passengers are responsible for the carriage and safe delivery of such baggage as by custom and usage is ordinarily carried by travelers for their personal use." (*Dexter v. Syrac., Bingh. & N. Y. R. R. Co.*, 42 N. Y., 326; *The Gt. North R. R. Co. v. Shepard*, 8 Excheq., 30.) In this case these pictures were carried evidently for the purpose of advertising the business of plaintiff. The law is well settled that that which is carried for the purpose of business would not come within the description of ordinary baggage. In *Neaxson v. Gt. Western Railway* Law Rep., 6 Queen's Bench 612, 3 Albany Law

Journal 476, 24 Law Tenn. Rep. 618, the rule was thus stated by Cockburn, C. J.: "Personal luggage is that which a passenger takes with him for his personal use and convenience on the trip, and does not include articles carried for the purpose of business."

In relation to the question of agencies, the following cases are in point: *Phil. & Wilmington R. R. Co. v. Weaver*, 34 Md., 430; *St. L. & N. Packet Co. v. Parker*, 59 Ills., 23; *Tomlinson v. Holt*, 49 Cali., 311; *Kelly v. Fall Brook Canal Co.*, 4 Hun. (N. Y.) 261; *Kerslake v. Schoonmaker*, 3 Thompson & Co. (N. Y.) 524; 1 Hun. (N. Y.) 436; 1 Parson's on Contracts, 44 and 69.

"Baggage is clothing and articles designed for personal use of a traveler." 42 N. Y. (3 Hand) 326. In section 1144 of Civil Code, "luggage" (as defined) "may consist of any articles intended for the use of a passenger while traveling, or for his personal equipment." Webster defines *baggage* to be—"The trunks, carpet bags, valises, hand boxes, &c., used to contain the clothing and other necessaries or conveniences which a traveler carries with him on a journey." The ticket of a passenger includes also the *ordinary* baggage required for his *personal accommodation* upon his journey, but does not include merchandise. In the 8th Am. Law Reg., page 399, the Court say: "The fare of the passenger covers the compensation for the freight of the baggage. The baggage must be *ordinary* baggage, such as a traveler takes with him for his personal comfort, convenience, or pleasure for the journey." It must be the "ordinary baggage of a traveler, regard being had for the journey proposed."

The foregoing authorities suggest this distinction between travelers or passengers on a journey.

The case at bar is not in that category. The plaintiff was a traveling concert troupe, on business, not on a *journey*, and attempted to carry that which was necessary for their business, to-wit: articles of merchandise for exhibition and advertising.

It is submitted that a showman might as well fold up his canvas in a huge trunk and pass it as personal baggage, or

DECEMBER TERM, 1876. 355

Waldron vs. The C. & N. W. R. R. Co.

send with his advance agent enough of show bills to cover an acre lot, folded up in several large trunks and call it personal baggage.

The pictures for which the plaintiff seeks to recover were not ordinary family pictures, but were pictures used as advertisements to call the attention of the public to the entertainments which were to be given by plaintiff and his family. They were like the pictures of actors, or theatre bills. They were part of the means used by plaintiff in carrying on his business, or in advertising it, and were no more personal baggage than samples of merchandise, or any other property carried for personal use but for the purpose of transacting or aiding in the transaction of business or trade.

On the question of baggage general, the counsel cited the following authorities: *Jones v. Voorhees,* 10 Ohio, 145; *Hawkins v. Hoffman,* 6 Hill, 589; *Winter v. Pacific R. R. Co.,* 41 Mo., 503; *Bell v. Drew,* 4 E. W. Smith, 59; *Merrill v. Grumel,* 30 N. Y., 594; *Butler v. Hudson River R. R. Co.,* 3 E. W. Smith, 57; *Gill v. Rowan,* 3 Penn. St. 552; *Morrow v. Great Western Ry. Co.,* 6 Albany Law Journal, 476; *Collins v. Boston & Maine R. R. Co.,* 10 Cushing, 506; *Smith v. Railroad,* 44 N. H., 325; *Stinson v. Conn. River R. R. Co.,* 98 Mass., 83; *Hopkins v. Wescott, et. al.,* 6 Blatchford C. C., 64; *Woods v. Devin,* 13 Ills., 476; *C. Cin. Air Line R. R. Co. v. Marcus,* 38 Ills., 219; *Chicago and Rock Island R. R. Co. v. Collins,* 56 Ills., 212; *Dexter v Railroad Co.,* 1 American Repts., 527.

*Brackett* and *Waldron,* for appellees.

SHANNON, C. J.—The chief questions presented by the record are, first, whether upon the facts as stated, and the evidence embraced in the case brought up on appeal, the railroad company is liable for the property of the plaintiff contained in the box; and second, whether there is any error in the instructions given by the Court to the jury.

All the disputed facts were determined by the jury when they found for the plaintiff on all the issues; and their decision upon such facts should stand, unless there was in-

sufficient evidence to warrant their finding.   As to the circum-
stances attendant upon the delivery of the box to defendant's
agent, the only discrepancy between the two witnesses for the
plaintiff and the two who testified for the defendant, con-
sisted in their different versions of what was said and done
after the trunks and the other box were checked.   The solu-
tion of this contradictory testimony depended, of course,
upon the credibility of the witness; and the jury, whose
province it was, saw fit to adopt the statement of the plain-
tiff's witnesses.

From the whole case as presented here, it therefore appears
that on the 30th of December, 1874, at Belle Plain, in Iowa,
the plaintiff purchased tickets from defendant's agent for him-
self, his son, and two daughters for their passage over
defendant's road from the station named, to Missouri Valley
Junction, in the same State.   At Belle Plain, upon exhibit-
ing the tickets to defendant's baggage-master there, (who had
authority to receive and check baggage), and pointing out
their baggage consisting of three trunks and two small boxes,
the agent checked the trunks and one of the boxes; but the
box in controversy,—a rough, pine box of about 18 by 20
inches and 10 inches in depth, with plaintiff's name printed
upon it,—having no handle or place to which a check could
be fastened, was for that cause (and for that cause only, as
all the witnesses agree), not checked; but the agent received
the box, saying that "he would place it in the baggage car,
and it would go just as safe, only at Missouri Valley it would
be necessary to look after it, or it might pass."   With this
understanding and agreement the plaintiff and his family got
on the train, and on their arrival at the Missouri Valley
Junction this box was missing.   The plaintiff immediately in-
formed the baggage-master of defendant, at the latter place,
of the fact, who said he would send back "a feeler," and
promised to telegraph; he took plaintiff's address, and said
he would follow it up.   The plaintiff's son also telegraphed
from the junction.   The plaintiff after having written to the
baggage-master at Chicago, and not recovering the box or its
contents, brought his action.

It further appears that, upon the trial, the railroad company, for the purpose of avoiding liability, disclosed the fact by the deposition of its agent who had received the box, that it had not been placed in the baggage car, but was left on the platform, from which, after the starting of the train, it was carried by him into the baggage room.

The other witness for defendant, the night baggage-master, after deposing that he was present when the other agent—the day baggage man—received and checked some baggage for plaintiff, and that " there was one small box that had nothing to which a check could be fastened," further declared as follows: " The next time I saw the box was in the evening of the day that said Waldrons left for the west. When I went on duty I found the box in the baggage room of the depot." It also appears that the defendant, to show its non-liability, set up the defense that the box was delivered, on that evening, at Belle Plain, to an alleged agent of the plaintiff, one Truesdell. To support this the further deposition of the night baggage-master was read to the jury, as follows: "About nine " o'clock that evening Truesdell came there and told me he " wanted to buy a ticket to State Center, and wanted that box, " left in the morning, checked to State Center. I sold him a " ticket to State Center, and he told me the box contained " photographs, and that he wanted me to see some of them. " He then unlocked the box, took out some of the pictures, " and insisted on my taking one of them, which I did." [The photographs were pictures of the plaintiff and his family.] " He then locked the box and put a small rope around the " box, and I checked it to State Center, Iowa, and put it on " the train."

The plaintiff, on the other hand, denied the existence of any authority whatever in Truesdell to receive the box, and gave counter evidence upon the point; and the question of Truesdell's agency, whether actual or ostensible, was fairly given to the jury by the charge of the Court.

Between the places named, the company was, at the time, a common carrier over its road, not merely of passengers and

their baggage, but also of articles of freight to be transported in its baggage cars, when such articles were accompanied by a passenger. And such passenger was chargeable with additional compensation whenever demanded of him. In this case the agent of the company before accepting the box, made no suggestion or demand of that nature.

As a carrier of passengers the company was bound, unless there was reasonable ground for refusal, to take all persons who applied for passage, and their baggage, not exceeding one hundred pounds of weight to each passenger; and as a carrier of such packages of freight as above described, to take them when offered for transportation by the accompanying passenger. And it was responsible, when duly delivered and accepted, for the safe conveyance and delivery of such baggage, and of such packages, to and at the point for which they were destined, unless prevented by an act of the public enemy, by act of law, or by an irresistible superhuman cause.

A delivery to a duly authorized agent of a common carrier, who is in the habit of receiving packages, is undoubtedly a sufficient delivery. In this case the delivery to Barstow, the agent of the company, was to one intrusted to receive baggage and packages, and not to one engaged in other duties.

A rough pine box, such as is used for merchandise, was presented for transportation and exposed to the view of the proper agent; it was of small dimensions, and of a kind rarely if ever used for packing wearing apparel. If it was not properly baggage it was a package of freight to go with the passengers. The property in the box was evidently not so packed as to assume the outward appearance of ordinary baggage, or so as to deceive or conceal. It was within the scope of the agent's business and duty to decide whether the company would receive and carry the box as baggage, or as an article of freight. If the latter, it should have been so stated, and the terms made known and insisted upon, if the company was desirous of avoiding any sort of responsibility for it as baggage. This principle is, we think, fully sustained by what is stated in the opinion of the Supreme Court, in the case of the *Hannibal Railroad v. Swift*, 12 Wallace, 274,

to-wit: "But if property offered with the passenger is not "represented to be baggage, and it is not so packed as to "assume that appearance, and *it is received for transportation* "*on the passenger train*, there is no reason why the carrier "shall not be held equally responsible for its safe conveyance "as if it were placed on the freight train, as undoubtedly he "can make the same charge for its carriage."

To the same purport is the case of *Great Northern Railroad Company v. Shepherd*, Eng. Rail. Cas., 310:—"If the traveler takes with him other articles, which do not come strictly within the denomination of baggage and exposes them to view, so that no concealment is practiced, and the carrier chooses to treat them as personal baggage, and carries them accordingly, and a loss occurs, he will be responsible therefor."

The company had given to its agent authority to receive and check baggage, and had also given him power to determine what property came within that class or description of property. He had similar power with regard to freight to be placed in the baggage car. In the usual and ostensible scope of his employment he received the box without hesitation, and said he would place it in the baggage car, and it would go just as safe as if checked.

But although thus delivered and accepted it was not transported at all. Yet it was taken into the custody of the company by its proper agent, and the company's liability as a carrier commenced at the instant of the acceptance. In Angell on the Law of Carriers, section 129, it is said that "the "entire weight of the responsibility rigorously imposed by "law upon a common carrier falls upon him contempo- "raneously (*eo instanti*) with a complete delivery of the goods "to be forwarded, if accepted, with or without a special "agreement as to reward; for the obligation to carry safely, "on delivery, carries with it a promise *to keep safely* before "the goods are put *in itinere*."

And again, section 131:—"A person who is a common carrier may at the same time be a warehouseman, and after he receives the goods, and before they are put *in itinere*, they

360 SUPREME COURT OF DAKOTA

Waldron vs. The C. & N. W. R. R. Co.

may be lost or injured. In such case, if the deposit in the warehouse is a mere accessory to the carriage, or in other words if the goods are deposited for the purpose of being carried, such person's responsibility, as a common carrier, begins with the receipt of the goods. That is, he then becomes responsible for all losses not occasioned by inevitable casualty; whereas, if he were a mere warehouseman, he is not liable, unless he has been guilty of ordinary neglect."

In *Camden R. v. Belknap*, 21 Wend., 354, it was considered that where the baggage was received but lost before transportation, the railroad company was answerable, as a common carrier, *for the safe keeping of the property;* and that its liability existed independent of any other contract, express or implied, for the safe keeping of the property, and without regard to any question of negligence, and that the Judge would have been well warranted in instructing the jury that the owner was entitled to their verdict. See, also, *Hickox v. Naugatuck R.*, 31 Conn., 281:—If a trunk is delivered at a railroad station at 11 A. M., to go in a train at 3 P. M., the railroad is liable as a carrier from the time of delivery.

About ten hours after the reception of the box, and the departure of the plaintiff and his family on the train, the night baggage-master, Staibler, who had been present at the delivery, undertook to surrender it to a third party, and did so. The question of fact as to Truesdell's authority to receive it as agent of plaintiff was determined in the negative by the jury, under careful and accurate instructions from the Court, and upon sufficient evidence. Where the defense is that a delivery was made to an agent of the owner, or consignee, it must be clearly proved that the person to whom the goods were delivered as agent was duly authorized as such. The carrier is under as much obligation to deliver property to the *right person*, as he is to deliver it in a reasonable time and at the proper place. Although Truesdell had before been an " advance agent " of plaintiff for the purpose of posting advertisements, etc., it by no means follows from this alone that he had any authority to receive and take away to State Center, property just consigned by the owner himself into the

custody of the company for transportation to Missouri Valley Junction, and which the owner, to the actual knowledge of both of the defendant's agents, intended to take in the same train with him to the latter place. If Staibler had not what was almost equivalent to actual notice of the dissolution of all business relations between the plaintiff and Truesdell, yet he certainly had enough in the acts and statements of the latter, under all the circumstances, to put a person of ordinary prudence and care upon guard and inquiry. If the delivery by a carrier be to the wrong person, although it be entirely by mistake, or by gross imposition, or upon a forged order, the carrier will nevertheless be responsible for the value of the goods so lost. (Story on Bailments, § 545 b.; also § 450; Angell, Car., § 324; *Winslow, et. al. v. Vermont & Mass. R. Co.,* 1 American Reports, 365.)

In *Stephenson v. Hart,* 4 Bing., 476, the delivery was, as in this case, to a person who showed that he had a knowledge of the contents of the box. And in *Duff v. Budd,* 3 Brod. & B., 177, the delivery was to a person to whom the defendant had before delivered parcels. Burroughs, J., said:—" Carriers " are constantly endeavoring to narrow their responsibility " and creep out of their duties, and I am not singular in " thinking that their endeavors ought not to be favored. The " question here is, whether there was gross negligence. I "think there was, and I am of opinion that the case was " properly left to the jury, and that they have given a proper " verdict."

Moreover, even if this defendant were not liable as a carrier, but simply as a warehouseman, yet this would follow: that warehousemen are not only responsible for losses which arise by their negligence, but also for losses occasioned by the innocent mistake of themselves and of their servants in making a delivery of the goods to a person not entitled to them. For it is a part of their duty to retain the goods until they are demanded by the true owner; and if, by mistake, they deliver the goods to a wrong person, they will be responsible for the loss, as upon a wrongful conversion.

To recapitulate, there was no allegation or pretence that

the plaintiff was endeavoring to practice a fraud on the company. He made no misrepresentations, and was not asked as to the contents or value. The box contained neither merchandise nor samples of merchandise; neither money nor jewelry, nor other valuables. With full knowledge of all the circumstances, that plaintiff had in the forenoon paid for tickets for himself and family, and had exhibited three trunks and two boxes as belonging to the party; that the trunks and one box had been checked as baggage; that the one in controversy had been accepted, but not checked solely because there was no place to which to attach a check; that thereupon plaintiff was told by the baggage-master that he would place it in the baggage car, and it would be just as safe; that the owner had gone on in the train, resting upon this understanding and agreement, whilst, contrary thereto, the package was left behind; with the box, the same evening, opened and its contents made known, and with a full right still to demand and exact freightage, if it was not strictly baggage; with the agent actually receiving a photograph of one of the plaintiff's daughters, as a gift from a person known not to be the owner, but who was desirous to obtain possession of the property; with all this, the company saw fit to deliver it to a wrongful claimant, and wound up the transaction by checking it for him, as baggage, to State Center.

We can see no error in the instructions to the jury; and we therefore hold, that, upon the case as settled and the evidence made part of it, the railroad company is liable for the said property of the plaintiff.

With regard to the remaining question, that of jurisdiction, it is to be observed that the attachment, under our Codes, is not original process; and by it an action is not commenced, nor upon it alone can judgment be obtained. The action is commenced by summons, and the attachment is an adjunct. It is an order in an action for the arrest of the debtor's property, in the nature of bail, for the payment of such judgment as the plaintiff may obtain. It is a remedy that can be employed only in an action already commenced, and has no existence independent of the action in which it is obtained.

A court can acquire a limited jurisdiction in an action by the allowance of a provisional remedy; but jurisdiction does not become *complete* until the service of a summons in some of the modes prescribed by law, or by the voluntary appearance of the defendant.

In this case the defendant voluntarily appeared by its attorney, made answer, and contested the claim throughout. A voluntary appearance by the defendant is equivalent to personal service of the summons upon him, and after such appearance the court acquires full jurisdiction for all purposes whatsoever.

The proceedings upon attachment may be void, or so defective as to give no jurisdiction of the person of the defendant; yet if he appears and contests the action upon the merits, a valid judgment may be rendered.

The judgment of the District Court is          AFFIRMED.

All the Justices concur.

---

# JUNE TERM, 1877.

PRESENT:

HON. PETER C. SHANNON, CHIEF JUSTICE.

HON. ALANSON H. BARNES,
HON. GRANVILLE G. BENNETT, } ASSOCIATE JUSTICES.