# CITY OF STURGIS, Respondent v. WALKER, Appellant

## (116 N.W.2d 803)

(File No. 9968. Opinion filed September 11, 1962)

**George P. Hurst** and **Tom Eastman, Jr.,** Rapid City, for Defendant and Appellant.

**David E. Morrill,** Sturgis, for Plaintiff and Respondent.

SMITH, J.   This is an appeal from an order which overruled a motion to dissolve a levy on described real property made pursuant to a Warrant of Attachment. The theory of appellant is that the attachment and levy abated by reason of the death of the defendant after the

action was commenced, and before service of the summons was made on the above named Rudolph Eickhoff.

█ █ It is provided by SDC 1960 Supp. 33.0735 that "There shall be attached to the transcript, or served separately within ten days after the appeal is taken if no transcript is used, assignments of the error claimed to exist and on which the appellant relies." Appellant failed to comply with this rule. While assignments of error are not required as a foundation to the jurisdiction of the appeal, Berke v. McCook County, 39 S.D. 579, 165 N.W. 985, they do provide counsel and the trial court with the precise information they require in preparing and settling a record for use in our review on appeal. The settled rule that there is nothing before this court for review, absent assignments of error, hardly needs citation of authority. Williams Bros. Lumber Co. v. Kelly, 23 S.D. 582, 122 N.W. 646; Gold Medal Dairy Co. v. Langenfeld, 61 S.D. 490, 249 N.W. 815; and In re Congdon's Estate, 74 S.D. 306, 51 N.W. 2d 877. In deference to counsel this court has frequently reviewed records lacking in assignments, or sufficient assignments, and has indicated its conclusion that appellant would not have prevailed if the claimed errors had been properly assigned. Counsel should not be misled by these holdings. Had the court's conclusion on the merits been favorable to appellant the holding might have been predicated on the absence of assignments of error. In the case at bar, as it will presently appear, we have reviewed the record and have concluded appellant could not have prevailed if there had been a compliance with the rule in question.

The summons and complaint in this action were filed and issued for service on the 24th day of October 1960. The complaint alleged in substance that the defendant, Rudolph Eickhoff, while serving as manager of plaintiff's liquor store from September 1957 to September 1960, had appropriated to his own use at least $12,000 of the receipts of that store, and prayed judgment against Eickhoff for that amount. On the same day a Warrant of Attachment was issued 'n said cause, and the sheriff did levy upon real

property of Eickhoff, described in the record. Search for Eickhoff, in an attempt to make service, resulted in finding him within the county some eighteen days later on November 12, 1960 in an unconscious state. He passed away some hours later without regaining consciousness.

On January 10, 1961, Harold J. Walker, above named, was appointed and qualified as administrator of the estate of Eickhoff. Thereafter on February 2, 1961 the trial court issued its order requiring the said administrator to show cause why he should not be joined as party defendant in the above matter in place of Eickhoff and summons and complaint served upon him. After hearing, the trial court entered its order on February 16, 1961 substituting the administrator as requested, and directing service of the summons and complaint upon him. When the order was made the administrator was absent from the state. Upon his return, on March 21, 1961, service of the summons and complaint was made upon him.

[3] Attachment is a remedy that has no existence independent of the action in which it is obtained. Chamberlain v. Hutchins, 1 Dak. 506(485); and Waldron v. Chicago & N. W. R. R. Co., 1 Dak. 351 (336), 46 N.W. 456. Therefore our initial inquiry must be as to the effect of the death of Eickhoff on the action in which the Warrant of Attachment was issued and the levy made. We turn to the controlling statutes.

"No action shall abate by the death * * * of a party * * * if the cause of action survive or continue." SDC 1960 Supp. 33.0414.

"All causes of action shall survive and be brought, notwithstanding the death of the person entitled or liable to the same. Any such action may be brought by or against the executor or administrator * * * of the deceased." SDC 1960 Supp. 33.-0414-1.

"An action is deemed to be pending from the time of its commencement until its final determination upon appeal, * * * ." SDC 1960 Supp. 33.0104.

"An action is commenced as to each defendant when the summons is served on him, * * *. An attempt to commence an action is deemed equivalent to the commencement thereof when the summons is delivered, with the intent that it shall be actually served, to the sheriff or other officer of the county in which the defendants or one of them, usually or last resided * * *. Such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days." SDC 1960 Supp. 33.0202.

"In case of death or other disability of a party, the court may allow the action to continue by or against his representatives * * *." SDC 1960 Supp. 33.0414.

■ ■ SDC 1960 Supp. 33.0202 supra is placed in a chapter entitled "Limitation of Time of Commencing Actions" of a Title of our Code dealing with "Judicial Procedure, Civil." It is settled, however, that it is a provision of general application. Tabour Realty Co. v. Nelson, 56 S.D. 405, 228 N.W. 807, and Taylor v. McCarty, 68 S.D. 510, 4 N.W.2d 816. Hence it follows that at the time of the death of Eickhoff, some eighteen days after the summons and complaint were delivered to the sheriff for service, as provided by SDC 1960 Supp. 33.0202 supra, the action had been commenced, and under SDC 1960 Supp. 33.0104 supra, was pending. It is also clear under the provisions quoted supra that the cause of action survived, SDC 1960 Supp. 33.0414-1, and the action did not abate. SDC 1960 Supp. 33.0414.

■ It is our view and holding that these provisions plainly reflect an intention to provide for reviving or continuing a pending action after the death of a party which occurred at any stage thereof after the action is commenced.

In the report of In re Connaway as Receiver of Moscow Nat. Bank, 178 U.S. 421 at 430, 20 S.Ct. 951, 44 L.Ed. 1134, a case in which the action had been commenced but defendant passed away before he could be served, Mr. Justice McKenna wrote for the court as follows:

"But even if White v. Johnson (27 Or. 282, 40 P. 511) and Auerbach v. Maynard (26 Minn. 421, 4 N.W. 816) concurred in holding that upon the death of a defendant the court could not proceed further in the action, we should, nevertheless, be unable to assent to the doctrine. At common law all actions abated by the death of parties before judgment, and to prevent the application and effect of that principle, § 955, preceded by § 31 of the Judiciary Act of 1789, was enacted, and provisions like that of § 385 of the Code of Civil Procedure of California were also enacted. The section is as follows:

" 'Sec. 385. An action or proceeding does not abate by the death or any disability of a party, * * * if the cause of action survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. * * *'

"This section does not make distinctions dependent upon the stages of the action or proceeding. The action or proceeding only needs to exist, and to distinguish its degrees of progress is certainly to add to the letter of the section.

"We are therefore disposed to the construction of a similar provision of the Code of Montana, made by the Supreme Court of Montana in Lavell v. Frost, 16 Mont. 93, 40 Pac. 146, not only because the construction is in consonance with the purpose of the statute, but accurate as to its letter."

The effect of the death of Eickhoff was to suspend proceedings until an administrator of his estate

was substituted. As is pointed out in 1 Am.Jur., Abatement and Revival, § 159, p. 105:

> "The statement often appearing in law actions where the common-law rule of abatement is changed, and in equity actions, that the action does not abate by death, which at common law would cause it to abate, must not be taken to mean that upon such event the action proceeds without any change. Upon the death of a party or the happening of any other event which would cause it to abate at common law, the action is suspended and the suspension has the same temporary effect on the rights of the parties as though the suit actually abated. In other words, the cause cannot proceed until someone is substituted for the decedent or other party."

The power to continue the action and to bring about the essential substitution is vested in the trial court by SDC 1960 Supp. 33.0414 under the provision thereof quoted supra. Of course, in the circumstances at bar, the suspension of the action having occurred eighteen days after the delivery of the summons to the sheriff and before service had been made, compliance with the provision of SDC 1960 Supp. 33.0202, supra requiring the first publication of the summons, or the personal service thereof, within sixty days of the attempt to commence an action became impossible. However, thereupon the trial court, under SDC 1960 Supp. 33.0414, was empowered to continue the action and to "order such personal representative * * * to be brought in * * * upon the application of any party to the action, or of any party entitled to be so substituted, or upon its own motion * * *." This section vests the court with a discretion to require that an action be continued within described fixed limits of time in case of the death of a plaintiff, but makes no express provision dealing with the time within which an action must be continued in case of the death of a defendant. Hence it seems reasonable to conclude that it was intended the court

should have power to order the action continued within such time as to it seemed reasonable. The administrator was appointed on January 10, 1961; he was brought before the court by order to show cause on February 2, and was ordered substituted on February 16. Service of summons and complaint was made on him on March 21 after he returned to the state from a vacation trip. That these proceedings were timely seems not open to serious debate.

It follows that the action upon which the attachment is founded has not abated.

Our next inquiry is as to the effect of the death of Eickhoff on the attachment.

It is provided

"The plaintiff at the time of issuing the summons or at any time thereafter, may have the property of the defendant attached, in the manner hereinafter prescribed, as security for the satisfaction of such judgment as the plaintiff may recover, in any of the following cases:

\*          \*          \*          \*          \*          \*

"For the purposes of this section an action shall be deemed commenced when the summons is issued; provided that personal service of such summons shall be made or publication thereof commenced within thirty days from date of issue of the warrant of attachment." SDC 1960 Supp. 37.2701.

That the attachment would have become void if the death of Eickhoff had not intervened and service had not been made, or publication of the summons commenced within the thirty-day period fixed by the quoted statute is settled. McLaughlin v. Wheeler, 2 S.D. 379, 50 N.W. 834. The case at bar is distinguishable because the action was suspended on the eighteenth day after the warrant was issued as a result of the death of the defendant and compliance with the statute became impossible.

The statutes which must be considered in determining whether the legislature intended death in such circumstances to void an attachment came into our law in 1901. It is reasonable to surmise that their enactment was the outgrowth of litigation commenced in 1899, in which it was ultimately held by this court that as an execution could not issue on a money judgment for the purpose of subjecting attached property in satisfaction thereof after the death of the judgment debtor, such death operated to dissolve the attachment. Yankton Savings Bank v. Gutterson, 15 S.D. 486, 90 N.W. 144. At any rate by Ch. 125, Laws 1901, brought forward as SDC 1960 Supp. 35.1422, which deals with the order of payment of claims against the estate of deceased persons the following pertinent language was enacted,

> "(6) All other demands against the estate, except that where **a lien for any demand exists by** mortgage, pledge, **attachment,** judgments, or execution levy, such lien shall have preference according to its priority to the extent of such demand, on any specific property on which such lien shall have attached." (Emphasis supplied.)

And by Ch. 167, Laws 1901, dealing with sales under execution, brought forward as SDC 1960 Supp. 35.1419(2), there is included the following revealing provision,

> "* * * if the judgment be for recovery of money, and an **attachment was actually levied upon any of decedent's property before his death** * * * the same may be sold for the satisfaction thereof and the officer making the sale must account to the executor or administrator for any surplus in his hands." (Emphasis supplied.)

These provisions preserve the lien of an attachment after the death of the defendant, not only in case where a judgment had been entered during his life, but in the absence of such a judgment, if the attachment actually had been levied during his lifetime. In the face of these provi-

sions to hold that death under the circumstances at bar destroyed a levy actually made, because the action was suspended and service of the summons became impossible, would be unreasonable and contrary to the spirit they reveal. Reading those provisions together with all of the provisions we have quoted, supra, it seems logical to believe, where a levy of an attachment had actually been made during the life of a deceased in the circumstances here revealed, that the legislature intended death to suspend both the action and the proceedings in attachment and to vest the trial court with the power, in its discretion, to revive and continue both the action and the attachment by directing a substitution of the administrator and the service of the summons upon him. We so hold.

It follows we are of the opinion the court did not err in refusing to dissolve the levy of the attachment.

The order of the trial court is affirmed.

All the Judges concur.