## IN RE TRUST ESTATE OF HIGGINS

(162 N.W.2d 768)

(File No. 10456. Opinion filed November 15, 1968)
Rehearing denied December 23, 1968

**Roubideaux, Poches & Reade,** Fort Pierre, for appellants and beneficiaries.

**Bangs, McCullen, Butler & Foye,** Rapid City, for respondent and trustee, Richard Peterson.

ROBERTS, Judge.

Marsh Higgins, a resident of Pennington County, died testate December 14, 1938, leaving surviving Maurice Higgins, his son, and four granddaughters. Testator named his brother, J. M. Hig-

gins, executor and trustee for the purpose of carrying out the provisions of his will.

On December 30, 1940, a final decree was entered in the Pennington County Court determining that title to the realty vested in the trustee for the benefit of the grandchildren in being and to be born from which decree no appeal was taken. Action was commenced in the Pennington County Circuit Court on August 12, 1944, by the devisees named in the will to quiet title to the real property described in the final decree, alleging that the trust was void by reason of indefiniteness and uncertainty. From an adverse judgment the plaintiffs appealed. Higgins v. Higgins, 71 S.D. 17, 20 N.W.2d 523. After determining that a county court has power to construe a will insofar as construction may be necessary to administer the estate and to distribute the property this court said: "In this case there is no uncertainty as to the property, and the beneficiaries are definite in that they constitute a class the members of which can be ascertained. Nor do we believe the trust is uncertain as to its object. As we construe the decree setting over the property to the trustee, he is to hold the legal title during the life of Maurice, collect all money due or to become due, pay the debts of the trust estate, manage the property for the benefit of the grandchildren beneficiaries, with a remainder in the grandchildren, born and to be born. Reading the decree in the light of the will we think it reasonable to hold that it was the intention of the testator that the grandchildren have a present benefit from the property at least to the extent of the income therefrom * * * As thus construed the trust falls within the purposes for which a trust in real property may be created".

J. M. Higgins continued to serve as trustee until his death on June 21, 1948. The circuit court entered an order on October 4, 1948, approving the final account of the deceased trustee made by the executrix of his estate and confirmed the appointment of Harold R. Horlocker as successor trustee. The trust included land referred to in the evidence as the Cheyenne River Ranch and a forty acre tract in Rapid Valley. The record indicates that J. M. Higgins, as trustee, filed annual accounts and disclosure

of the administration of the trust showing receipts and their sources and disbursements.[1] An extension of the lease of the ranch was negotiated. A written lease was entered into between the trustee Harold Horlocker and Maurice Higgins. The stipulated annual rent was $600 and the term of the lease was for one year ending March 1, 1950, and from year to year thereafter providing that the lessee not later than the first day of February of each year notify the trustee or his successor of his election in writing to extend the lease for another year and upon payment of the annual rent. The lease by its terms provided that it not extend beyond March 1, 1960, or the first day of March following the termination of the trust created by the will.

The issues here presented arose when Richard Peterson applied May 27, 1964, to the circuit court for approval of his final account and discharge as trustee. He was appointed trustee on April 26, 1956, succeeding Harold R. Browning, who served as trustee following the resignation of Harold Horlocker. The beneficiaries named in the trust created by the will filed written objections to the final account. They objected on the ground that the trustee failed to exercise due care and skill in the administration of the trust. It is argued that testator intended that his son take no part of his estate except the amount of $50 as provided in the will and that in fact and in violation of the terms of the will Maurice Higgins for a nominal rental controlled and operated the ranch to the detriment and loss of appellant beneficiaries.

The trustee denied that there was a breach of trust and claimed that the beneficiaries had knowledge and acquiesced

---

1. In the third annual report of the trustee it is stated: "On March 23, 1943, your Trustee entered into a Lease with John Olsen of Spearfish, South Dakota, for the lease of the 2,834.86 acres of land located in Townships 1 and 2 South of Range 13 East, B. H. M., the lease to expire on March 1, 1946, whereby the tenant agreed to pay $500.00 a year". The fourth annual report contains the recital: "Your Trustee further reports * * * that the lease to John Olsen described in your Trustee's Third Annual Report was assigned by him to H. M. Witte and was assigned by the said H. M. Witte to Maurice Higgins, the father of the beneficiaries."

And the eighth annual report contains the recital: "That the Cheyenne River ranch is leased to Maurice Higgins for the year ending March 1, 1948, for the sum of Six Hundred Dollars ($600.00), the receipt of which rent was reported in the Account rendered April 25, 1947. That the Rapid Valley forty acres is leased to Jean Higgins, the mother of all the beneficiaries under said Trust and the Guardian of such of those beneficiaries as are minors for the use and benefit of such beneficiaries, with the understanding that such lessee is to reimburse the Trustee for the taxes paid by him on said forty acres."

in rental agreement. During these proceedings, the beneficiaries named in the will signed and filed a document entitled "Request and Waiver" wherein they petitioned the court to permit the mother of the beneficiaries and Jaynelle Higgins, one of the beneficiaries, to occupy the forty acre tract without reimbursement to the trust except the payment of the real estate taxes and fire insurance premiums on the residence and other buildings thereon. The trial court made the following findings: "Maurice Higgins and his wife were divorced and his wife continued to occupy the forty acres in Rapid Valley and Maurice Higgins continued to occupy the Cheyenne River Ranch under the written lease. The $600.00 annual rental for the ranch was paid for each year up until March 1, 1960. The mother of the contestants paid no rent to the trustee for the use and occupancy of the forty acres and the contestants raise no objections at this time to the trustee's failure to collect this rental. The youngest of the daughters (contestants) attained her majority in 1953. Each of the contestants was aware that their father was leasing the ranch for $600.00 and was aware of the written lease. * * * I further find that the contestants and beneficiaries acquiesced in and consented to the rental of the ranch to their father for all the years up to March 1, 1960, the date upon which the written lease terminated. After the termination of the written lease, I find that the trustee was negligent in not obtaining the fair rental value of the ranch for the period commencing March 1, 1960, and ending March 1, 1964. The fair rental value for that period was $2,000.00 per year. The trustee received but $600.00 per year for this period." Upon these findings the court concluded that the account of the trustee should be surcharged in the amount of $5,600 or the difference between the annual rent of $600 received by the trustee during the four year period ending March 1, 1964, and the fair rental value of the ranch.

SDC 1960 Supp. 33.26 provides the procedure for the administration of trust estates except as otherwise specifically provided by statute or rule. These rules govern the procedure in the circuit courts of the state with respect to the supervision of trusts. The trustee or beneficiary of any trust "may at any time petition the Court for its action as to any matter relevant to the

administration of the trust". The court upon the filing of a proper petition must set the matter for hearing and give notice as therein provided. SDC 1960 Supp. 33.2607. The "matter" herein involved the transactions set forth in the final report of the trustee and the allowance thereof and the objections filed thereto. The court after hearing oral testimony and other evidence entered an order dated March 16, 1967, rejecting proposed findings of fact and conclusions of law submitted by the beneficiaries. Thereafter the court entered an order dated March 24, 1967, surcharging account of the trustee in the amount above stated and otherwise approving the account. From these orders the beneficiaries appealed.

■ ■ The general rule with reference to the accountability of a trustee is that he "must use at least ordinary care and diligence in the execution of his trust." SDC 59.0205. According to the rule of the American Law Institute, Restatement of Trusts (2nd Ed.), § 174, Comment a, the standard of care required is the external standard of a man of ordinary prudence in dealing with his own property. And as was said by the court in the Matter of Clark's Will, 257 N.Y. 132, 177 N.E. 397, 77 A.L.R. 499: "* * * 'the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.' King v. Talbot, 40 N.Y. 76, 84, 85. The statement has been frequently approved."

Respondent asserts that the assignments do not point out the errors alleged to exist and that if insufficiency of the evidence to justify the decision of the trial court is claimed, the assignments do not state the particulars wherein the evidence is claimed to be insufficient. See SDC 1960 Supp. 33.0735; Stoecker v. Stoecker, 74 S.D. 415, 54 N.W.2d 171; J. R. Watkins Company v. Beisel, 78 S.D. 413, 103 N.W.2d 333. We think that the record is such as to leave no doubt that the decision of the trial court is conclusive as to the rights of the parties and that appellants in any event could not have prevailed. City of Sturgis v. Walker, 79 S.D. 655, 116 N.W.2d 803. We do not determine whether the asserted errors were properly assigned.

The matters determined are the questions decided in resolving the issues presented by the conflicting claims of the parties. Consideration of the facts as they existed at the time of their occurrence leaves no doubt that appellants are barred by their consent and acquiescence in the leasing of the ranch to their father and the amount of the annual rental stipulated in the written lease.

■ It is obvious that a beneficiary under no legal disability cannot hold a trustee liable for failure to exercise ordinary care and diligence in the execution of his trust if such a beneficiary prior to or at the time of the act or omission consented to or acquiesced therein. Restatement of the Law, Trusts (2nd Ed.), § 216; Bogert, Trusts & Trustees 2d Ed., §§ 941-944; In re Strawbridge's Estate, 322 Pa. 406, 185 A. 726; In re Schlicht's Estate, 231 Wis. 324, 285 N.W. 730.

■ The trust did not terminate until the death of Maurice Higgins on February 22, 1965, at which time the real property remaining in the trust vested in the appellants. Higgins v. Higgins, supra. Title had not vested in them during the period of time here involved and the youngest of the beneficiaries had attained her majority prior to the trusteeship of respondent Peterson. Maurice Higgins for a considerable number of years had been a lessee of the ranch prior to the time that the trust assets were delivered to respondent. Predecessor trustees had rendered to the court accounts of the administration of the trust. The orders of the court settling the accounts contain recitals that copies of the accounts had been furnished to the mother and guardian of the minor beneficiaries and each of the others named in the will. These accounts showed receipts including payment of rentals by the father and at least in two of the accounts the trustee reported that the father was lessee of the ranch. Respondent accepted payment of rents under the existing lease and appellants made no claim or demand on him and took no action during the term of the lease to hold him responsible for any loss resulting from alleged mismanagement of the trust. In addition to the foregoing facts, there is the testimony of a witness called by the beneficiaries which supports

the findings of fact made by the trial court. The witness testified that he had been contacted by appellant beneficiaries and was asked to "take over the trust" and that there was discussion regarding the written lease and the amount of the stipulated rental. He was informed that the beneficiaries did not object to the rental agreement "as it had been that way for several years and they wanted to continue it that way". The decision of the trial court under the issues and the evidence presented and applicable principles is fully justified.

The orders under review are affirmed.

All the Judges concur.