In the Matter of the Max A. KUEHN, Jr., Trust U/W Max A. Kuehn, Deceased.

Nos. 12837, 12839 and 12888.

Supreme Court of South Dakota.

Argued March 13, 1980.

Decided July 15, 1981.

James R. Becker of May, Johnson, Doyle & Becker, P.C., Sioux Falls, for appellants Crippled Children's Hospital and School and South Dakota Children's Home Society Nos. 12837 and 12888; Louis R. Hurwitz of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellants Jane S. Kuehn and Martha K. Maierhauser No. 12839.

JONES, Circuit Judge.

Max A. Kuehn, Sr., died testate on April 26, 1957, leaving a widow, Nell Carter Kuehn, and two sons, Carter and Max, Jr. Under the terms of his will, the residue of his estate was placed in trust. Included in the residue was a one-half interest in farm land adjacent to Sioux Falls.[1]

The sons were to receive the income from the trust. Carter died in 1960 without issue, and his interest in the trust went to Max, Jr., who died on September 11, 1971. The widow and daughter of Max, Jr., then became the income beneficiaries of this trust.

The will provided that upon the death of the sons of Max A. Kuehn, Sr., and their children and widows who were living at the time of his death, the trust would terminate and be distributed to the lineal descendants of his sons in existence, and if there were none, then to certain charities as contingent remaindermen. The daughter and only child of Max A. Kuehn, Jr., has had surgery rendering her incapable of having children, so it appears likely that the contingent remaindermen will receive the corpus of this trust.

This is the third time that disputes between the income beneficiaries and the contingent remaindermen have been before this Court. Nell Carter Kuehn, who died testate in 1971, left virtually an identical will with a similar trust. See *In re Estate of Kuehn*, 87 S.D. 569, 212 N.W.2d 356 (1973). *In Kuehn v. First Nat. Bank in Sioux Falls*, 90 S.D. 96, 238 N.W.2d 490 (1976), we vacated an order approving the 1973 accounting to permit litigation of the issue of whether a portion of the sale proceeds of a 1973 real estate sale should be allocated to the income beneficiaries. This appeal resulted from that litigation.

The trial court entered an order finding that the real estate that had been sold was underproductive, and allocated $49,374.43 of the sale proceeds to the income beneficiaries under the formula contained in Restatement (Second) of Trusts § 241 (1959).

The trial court also entered an order allowing and denying certain requests for attorney fees and costs.

The primary issue in this appeal is whether under the facts of this case the income beneficiaries are entitled to share in the proceeds from five parcels of real estate heretofore sold by the trustee.

Normally, income beneficiaries do not share in the appreciation of value of trust assets. Restatement (Second) of Trusts § 233(b) (1959); III A. Scott, The Law of Trusts § 233 (3d ed. 1967). This creates an inequity where those assets consist of unproductive or underproductive property, and Restatement (Second) of Trusts § 240 (1959) evolved to do equity as between competing classes of beneficiaries.[2]

1. The farms are known as the "West 41st Street farm" consisting of approximately 239 acres originally appraised at $200 per acre, some of which was sold for $6,000 per acre; the "West 12th Street farm" consisting of approximately 160 acres originally appraised at $125 per acre; and the "South Minnesota Avenue farm" consisting of approximately 152 acres originally appraised at $106.60 per acre, some of which was sold for $3,000 per acre.

A total of 222 acres were sold in five separate sales between 1972 and 1977 for approximately $630,000, of which the trust received one-half.

2. § 240. Unproductive Property

Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of return on trust investments, and is likely to continue unproductive or under-pro-

This section provides in substance that where assets are unproductive or underproductive and likely to remain so, the trustee is under a duty to the income beneficiaries to sell such assets within a reasonable time, unless it is otherwise provided by the terms of the trust. Restatement (Second) of Trusts § 241 (1959) sets out a formula for allocation of the net sale proceeds where the sale is delayed.[3]

Because the real estate assets of this trust were only fractional interests held jointly with other members of the Kuehn family, Max A. Kuehn, Sr., expressly authorized the trustees to hold such realty in order to protect the interests of the other owners and to consult with them before making any sales.[4] The contingent remaindermen argue that this provision negates the duty to sell required by Restatement (Second) of Trusts § 240 (1959).

We have previously held that the income beneficiaries in the Nell Carter Kuehn trust were the primary objects of the testatrix's bounty. *In re Estate of Kuehn,* supra, 212 N.W.2d 356 at 359. That holding applies with equal force to this trust.

It appears from the evidence presented in the trial court that the income from the land sold ranged from 1% to 2% of the value of the property at a time when the trial court found that return achieved by trust institutions in Sioux Falls ranged from 5.02% to 5.86%. There is no real dispute that the property in question was underproductive.

The income beneficiaries argue that where the land sold was underproductive because of its great appreciation in value and since they are the primary objects of the testator's bounty, they should share in

---

ductive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time. Restatement (Second) of Trusts § 240 (1959).

**3.** § 241. Allocation on Delayed Conversion
(1) Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2).
(2) The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with simple interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income.
(3) The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale. Restatement (Second) of Trusts § 241 (1959).

**4.** The applicable provisions of Mr. Kuehn's will were:

ARTICLE SIXTH, Paragraph E:
I give and grant to my trustees broad power in connection with the handling, division and investment of funds and properties of the trust estates created by this my Will, and of each thereof, permitting the trustees to maintain the assets in the form in which they are invested at the date of the creation of the trust estates, and to sell, transfer and convey any and all of such trust assets and reinvest the proceeds in such securities or investments as the trustees shall deem proper, including common stocks and the common stock of my corporate trustee, intending that the trustees, in connection with the handling, division and investment of said funds and properties throughout the term of, and at the conclusion of this trust for purposes of distribution, shall have power to do with such assets the same as I could have done had I remained alive....

ARTICLE SEVENTH, Paragraph 4:
A considerable amount of the assets of my estate consists of real estate which is owned jointly by myself and other members of the Kuehn family, and it is my desire that the executors and trustees do not make any sale of such assets without first conferring with the other members of the Kuehn family interested in protecting their interests in the commonly owned property, and to either sell such property to the co-owners, members of the Kuehn family, or collaborat [sic] with them in connection with any such proposed sale insofar as this can be done under the applicable rules of procedure.

the sale proceeds even though the testator authorized the trustees to retain these assets. We agree. *In re Jackson's Will*, 258 N.Y. 281, 179 N.E. 496 (1932); *In re Rowland's Estate*, 273 N.Y. 100, 6 N.E.2d 393 (1937); *Amerige v. Goddard*, 316 Mass. 566, 55 N.E.2d 919 (1944).

The fact that the testator authorized the retention of the real estate assets does not relieve the trustees of the legal obligation to treat the income beneficiaries fairly. 76 Am.Jur.2d *Trusts* § 324 (1975); Restatement (Second) of Trusts § 232 (1959); III A. Scott, The Law of Trusts, supra, § 232; 51 Am.Jur.2d *Life Tenants and Remaindermen* § 26 (1978). When land held in trust appreciates in value to the point it becomes underproductive, and there are conflicting interests between income beneficiaries and remaindermen, the law will imply a duty to sell the land within a reasonable time, even in those instances where the testator authorized the trustee to retain the assets. Such a result is required in this case in order to carry out the clearly expressed intent and desires of the testator, and to treat the competing interests equitably.

We approve the formula set out in Restatement (Second) of Trusts § 241 (1959) as a proper formula for making an equitable allocation of the sales proceeds.

The trial court held that because Max A. Kuehn, Jr., was both a co-trustee and beneficiary, the income beneficiaries' claim to apportionment of the sale proceeds cannot extend back beyond the date of his death on September 11, 1971. Max A. Kuehn, Jr., as co-trustee, either consented to or acquiesced in retention of this real estate. *In re Trust Estate of Higgins*, 83 S.D. 535, 162 N.W.2d 768 (1968). The present income beneficiaries are not entitled to an allocation of income pre-dating their interest in this trust.

In determining the current rate of return on trust investments, the trial court derived the percentages used from the investment results of three Sioux Falls bank trust departments during the time involved herein. The income beneficiaries contend that good grades of corporate bonds would yield considerably higher income than the results achieved by the Sioux Falls banks. The trial court's finding is amply supported by the evidence and will be affirmed.

We have examined the other issues raised by this appeal and those presented by the notice of review and find them to be without merit.

The orders appealed from are affirmed.

WOLLMAN, C. J., and HENDERSON and FOSHEIM, JJ., and DOBBERPUHL, Circuit Judge, concur.

DOBBERPUHL, Circuit Judge, sitting for DUNN, J., disqualified.

JONES, Circuit Judge, sitting for MORGAN, J., disqualified.