# *In re* CONNAWAY AS RECEIVER OF THE MOSCOW NATIONAL BANK.

## ORIGINAL.

No. 9, Original. Submitted April 9, 1900.—Decided May 28, 1900.

A national bank was closed by order of the Comptroller of the Currency and a receiver appointed. An assessment was made upon the holders of stock. Overton and Hoffer were among those who were assessed, and payment not having been made, suit was brought against them. Service

was made upon H., but not upon O., who was very ill, and who died without service having been made upon him. He left a will, under which J. P. O. was duly appointed his executor. The executor was summoned into the suit by a writ of *scire facias.* A motion was made to set aside the *scire facias* and the attempted service thereof, which motion was granted. The executor being substituted in the place of the deceased as defendant, the court decided that it had acquired no jurisdiction over the deceased, and could acquire none over his executor. Thereupon the receiver applied to this court for a writ of mandamus to the Judges of the Circuit Court of the United States for the Ninth Circuit commanding them to take jurisdiction and proceed against J. P. O. as executor of the last will and testament of O., deceased, in the action brought by the receiver to recover the assessments. *Held:*

(1) That mandamus was the proper remedy, and the rule was made absolute ;

(2) That the action of the Circuit Court in setting aside the *scire facias* was here for review ;

(3) That *scire facias* was the proper mode for bringing in the executor, and under Rev. Stat. § 955, it gave the court jurisdiction to render judgment against the estate of the deceased party in the same manner as if the executor had voluntarily made himself a party.

THE case is stated in the opinion.

*Mr. W. L. Hillyer, Mr. Curtis Hillyer* and *Mr. Olin L. Berry* for petitioner.

*Mr. W. H. Anderson* and *Mr. Jesse W. Lilienthal* for respondents.

MR. JUSTICE MCKENNA delivered the opinion of the court.

THIS is a petition for a writ of mandamus to the Judges of the Circuit Court of the United States for the Ninth Circuit and District of California, which substantially shows as follows:

The Moscow National Bank of Moscow, Idaho, was a corporation organized under the national banking laws of the United States, with its place of business at Moscow, Idaho.

The bank, becoming insolvent, was closed by order of the Comptroller of the Currency of the United States, and taken control of by that officer.

On January 3, 1898, he appointed petitioner receiver of the bank's assets.

On June 14, 1897, the Comptroller made an assessment of one hundred dollars on each share of the capital stock of the bank, and ordered the stockholders to pay the same on or before July 14, 1897. O. P. Overton and C. A. Hoffer were owners of one hundred shares, and by the assessment became indebted to petitioner in the sum of $10,000, with interest from June 14, 1897.

On March 28, 1898, petitioner commenced an action in that court against said Overton and Hoffer for the said sum of $10,000, and caused a summons to be issued, directed to them as defendants, and placed it in the hands of the marshal for service.

Service was made in the usual form by the marshal on Hoffer personally, in Santa Rosa, in said district.

As to Overton, the marshal made the following return on the 5th of April, 1898: "I hereby certify that I was unable to make personal service on O. P. Overton, as he was very sick, and was not permitted to see any one, under instructions of his physicians."

On April 13, 1898, O. P. Overton died without service having been made upon him.

He made a last will and testament, appointing John P. Overton executor thereof, which was duly probated, and letters testamentary were duly issued.

On March 15, 1899, these facts were brought to the notice of the Circuit Court, and petitioner moved for and obtained an order directing that a writ of *scire facias* issue to said John P. Overton, which concluded as follows: "You are hereby commanded within twenty days after the service upon you of this writ to appear and become a party to this suit, according to the provisions of section 955 of the Revised Statutes of the United States, or show cause why you should not, otherwise judgment may be taken against the estate of said deceased in like manner as if you had voluntarily made yourself a party."

The writ was duly served and a motion was noticed for April 17, 1899, for an order setting aside the *scire facias* "and the attempted service thereof."

The ground of the motion was that " Overton died before the

service upon him of any process, that no process was ever served upon him herein, and that this action was never pending against him; and upon such other grounds as to the court may seem proper."

The motion was granted, and the petitioner allowed an' exception.

On June 12, 1899, upon the suggestion of the death of defendant O. P. Overton, the court made an order substituting John P. Overton as executor of the last will and testament of O. P. Overton, deceased, as defendant, and ordered an alias summons to issue to him as executor.

The summons was duly served, and on August 11, 1899, he by his attorneys, filed and served a notice of motion to set aside the order of substitution and quash the alias summons, on the ground "that said O. P. Overton died before the service upon him of any process herein; that said alleged alias summons is not in the form required by law, and upon such other grounds as to the court may seem proper."

The matter coming on to be heard on November 20, 1899, and having been submitted, it was granted on December 4, 1899, and petitioner was allowed an exception.

The petition for a writ of mandamus alleges that the ground upon which said court set aside the service of summons was that the action had abated by the death of O. P. Overton before the service of process upon him; and prays that a writ of mandamus be issued to the judges of the Circuit Court of the United States aforesaid to take jurisdiction and proceed against John P. Overton as executor as aforesaid.

A rule to show cause was granted. The return thereto by the learned Judge of the Circuit Court admits that the allegations of the petition as to the proceedings had in the Circuit Court are true, except that the court "has not refused to take jurisdiction of the action therein referred to, but only of the person of John P. Overton, executor of the last will and testament of O. P. Overton, the deceased defendant in said action." And the return alleged that the grounds upon which the court set aside the service of the alias summons were stated in the opinion of the court. 98 Fed. Rep. 574.

The basis of the opinion is that the court had acquired no jurisdiction over the deceased defendant O. P. Overton, and could acquire none over his executor, John P. Overton.

1. It is objected that mandamus is not the proper remedy. Counsel say : " This is not a case in which the court refuses to entertain jurisdiction. The action has not been dismissed. It is still pending in the Circuit Court, and may, and doubtless will, proceed to final judgment." But final judgment against whom? Not against O. P. Overton, for he is deceased. Not against John P. Overton or the estate he represents, because he has not been made a party to the action, and judgment against Hoffer alone may not be all of petitioner's remedy. If the court's ruling is erroneous, how can it be redressed by an appeal from the judgment, Overton not being a party to the action? The court declined to make him a party on the ground that it had no jurisdiction to do so. If it has jurisdiction, mandamus is the proper remedy. *Grossmayer, Petitioner*, 177 U. S. 48. Whether the court had jurisdiction we will proceed to consider.

2. The return of the rule to show cause is confined to the action of the Circuit Court on the alias summons. But its action for setting aside the writ of *scire facias* is also here for review.

Section 955 of the Revised Statutes of the United States provides as follows :

" When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend such suit to final judgment. The defendant shall answer accordingly ; and the court shall hear and determine the cause, and render judgment for or against the executor or administrator, as the case may require. And if such executor or administrator, having been duly served with a *scire facias* from the office of the clerk of the court where the suit is pending, twenty days beforehand, neglects or refuses to become a party to the suit, the court may render judgment against the estate of the deceased party in the same manner as

if the executor or administrator had voluntarily made himself a party. The executor or administrator who becomes a party as aforesaid shall, upon motion to the court, be entitled to a continuance until the next term of said court."

It is preliminarily urged against this section that it "applies only where an action is ' brought in a Federal court, and is based upon some act of Congress, or arises under some rule of general law recognized in the courts of the Union;' that in such an action ' the question of revival will depend upon the statutes of the United States relating to the subject;' but that otherwise it depends upon the laws of the State in which it is commenced." *Martin* v. *B. & O. Railroad*, 151 U. S. 673; *B. & O. Railroad* v. *Joy*, 173 U. S. 226, are cited.

In those cases the controversy was over the survival of the action; in the pending case that is not the controversy. It is not contended that the action does not survive. It is only contended that personal jurisdiction was not obtained of O. P. Overton before his death, and that, therefore, his executor, John P. Overton, could not be brought into the action, either by *scire facias*, under section 955, Rev. Stat., or by motion suggesting the death of his testate and by alias summons.

In *Schreiber* v. *Sharpless*, 110 U. S. 76, cited in *Martin* v. *B. & O. Railroad, supra*, it was decided that "whether an action survives depends on the substance of the cause of action, not on the forms of proceeding to enforce it." And that a cause of action on a penal statute of the United States did not survive, even though causes of action on state penal statutes could be prosecuted after the death of the offender.

In *Martin* v. *B. & O. Railroad*, however, the action was for personal injuries, and it was said, "whether the administrator has a right of action depends upon the law of West Virginia, where the action was brought and the administrator was appointed." Rev. Stat. § 721; *Henshaw* v. *Miller*, 17 How. 212. "The mode of bringing in the representatives, if the cause of action survived, would also to be governed by the law of the State, except so far as Congress has regulated the subject." It was determined upon consideration that the cause of action did not survive.

In *B. & O. Railroad* v. *Joy*, the question was presented in a unique aspect. The action was for personal injuries, which occurred in Indiana, and suit was brought in Ohio. By the laws of the former State the action did not survive; by the laws of the latter, the cause of action did survive. If suit had not been brought before the death of the person injured, the cause of action abated in both States.

The cause was removed to the Circuit Court of the United States, and it was held that the cause of action survived the death of the person injured, and could be revived in the name of his personal representative. We said: "We think that the right to revive attached, under the local law, when Hervey [the person injured] brought his action in the state court. It was a right of substantial value, and became inseparably connected with the cause of action, so far as the laws of Ohio were concerned." And it was denied that the right to revive was lost by the removal of the case to the Circuit Court of the United States or affected by sec. 955, Rev. Stat. We said further: "Whether a pending action may be revived upon the death of either party and proceed to judgment depends primarily upon the laws of the jurisdiction in which the action was commenced. If an action be brought in a Federal court, and is based upon some act of Congress or arises under some rule of general law recognized in the courts of the Union, the question of revivor will depend upon the statutes of the United States relating to that subject. But if at the time an action is brought in a state court the statutes of that State allow a revivor of it on the death of the plaintiff before final judgment—even where the right to sue is lost when death occurs before any suit is brought—then we have a case not distinctly or necessarily covered by section 955."

By section 955 an executor or administrator of "plaintiff or petitioner or defendant in any suit in any court of the United States," may be made a party by "*scire facias* served from the office of the clerk of the court where the suit is pending."

When can a suit be said to be "in any court of the United States," or said to be "pending" therein? Is not the answer inevitable, from the time the suit is commenced? It cannot be

pending until it is commenced, and if it continue until the death of the "plaintiff or petitioner or defendant," the requirements of the section seem to be satisfied.

Another inquiry becomes necessary — when is a suit commenced? For an answer we must go to the California statutes. By section 405 of the Code of Civil Procedure, it is provided: "Civil actions in the courts of this State are commenced by filing a complaint." By section 406 summons may be issued at any time within a year, and if necessary to different counties. The defendant may appear, however, at any time within a year. The filing of the complaint, therefore, is the commencement of the action and the jurisdiction of the court over the case. The jurisdiction would undoubtedly continue for a year, and probably afterwards, and a motion to dismiss would probably be necessary to get rid of the case. *Dupuy* v. *Shear*, 29 Cal. 238, 242; *Reynolds* v. *Page*, 35 Cal. 296, 300.

3. It is said, however, that jurisdiction of the person of O. P. Overton had not been obtained prior to his death, and this is undoubtedly true. Service of summons was necessary for that. It was so decided in *Dupuy* v. *Shear, supra;* and section 416 of the Code of Civil Procedure provides : "From the time of the service of the summons and of a copy of the complaint in a civil action, where service of a copy of the complaint is required, or the completion of the publication when service by publication is ordered, the court is deemed to have acquired jurisdiction of the parties, and to have control of all the subsequent proceedings. The voluntary appearance of a defendant is equivalent to personal service of the summons and copy of the complaint upon him."

It is claimed that this section precludes jurisdiction of "the subsequent proceedings" in the action, unless the summons was served, or, to quote counsel, "the Circuit Court in this instance lacked 'jurisdiction' and 'control' of the 'proceedings,' so far as the defendant Overton was concerned. It was, therefore, absolutely powerless to lay its hands upon the deceased defendant's representative." The contention is claimed to be supported by the construction of similar statutes in Oregon and Minnesota made by their courts. *White* v. *Johnson,* 27 Oregon,

282, and *Auerbach* v. *Maynard*, 26 Minn. 421. The latter case sustains the contention, and proceeds to the extent of denying the court any jurisdiction to proceed further in the action. *White* v. *Johnson* does not go so far. It cites and follows the Minnesota case to the extent of holding "that the court is without power or authority to take any action looking to the rendition of a personal judgment merely without first obtaining jurisdiction through the service of a summons upon the defendant." But the court did not decide that it had no control of subsequent proceedings, but reduced the question to one of procedure and the necessity of service of the summons before a personal judgment could be taken. The court admitted that the statute provided that no action abated upon the death of the party, and provided that the court might allow the action to be continued on motion, and that such was the practice in New York and in California under similar statutes, and then said: "The statute provides that the court may, at any time within one year after the death of a party, on motion, allow the action to be continued against the personal representative, but no provision is made in a case of this kind, as to the manner of bringing in the substituted party. The court could, therefore, adopt any reasonable procedure that might seem proper, but the service of a valid summons could not be dispensed with. Probably the better practice would have been for the lower court to have required the plaintiff to file a supplemental complaint in the action, showing the death of defendant and the appointment of an executrix, and thereupon to issue an alias summons containing the title of the action after substitution made, and had the same directed to the said Cordelia Johnson. A service of such a summons, together with a copy of the complaint, would undoubtedly suffice to require her appearance, in default of which judgment might have been entered against her. Such a practice and procedure seem reasonable, and well calculated to effect the desired results in an orderly manner." The case was reversed, and sent back for such other proceedings as might be deemed advisable.

It is certain that this case is not authority for the contention that the court had no jurisdiction or control over subsequent

proceedings. It asserted such jurisdiction, and held that in its exercise "the court could, therefore, adopt any reasonable procedure that might seem proper," provided a summons was served.

But even if *White* v. *Johnson* and *Auerbach* v. *Maynard* concurred in holding that upon the death of a defendant the court could not proceed further in the action, we should, nevertheless, be unable to assent to the doctrine. At common law all actions abated by the death of parties before judgment, and to prevent the application and effect of that principle, section 955, preceded by section 31 of the Judiciary Act of 1789, was enacted, and provisions like that of section 385 of the Code of Civil Procedure of California were also enacted. The section is as follows:

"SEC. 385. An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of the death or disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

This section does not make distinctions dependent upon the stages of the action or proceeding. The action or proceeding only needs to exist, and to distinguish its degrees of progress is certainly to add to the letter of the section.

We are, therefore, disposed to the construction of a similar provision in the Code of Montana, made by the Supreme Court of Montana in *Lavell* v. *Frost*, 16 Mont. 93, not only because the construction is in consonance with the purpose of the statute, but accurate as to its letter.

The action was upon a bill of exchange. Frost, the defendant's intestate, died after the complaint was filed, and the defendant, his administratrix, was substituted in his stead.

The court said: "It does not appear whether Frost was served with summons before his death, but the action was commenced before his death. An action is commenced by filing a

complaint. (Code Civ. Proc. §66.) 'An action or defence shall not abate by the death of a party, but shall survive and be maintained by his representatives.' (§22.) . . . So far we are of opinion, there was no error in the case."

The procedure in California in case of the death of the defendant before service has not been ruled upon, but in case death occur after service, it was said in *Taylor* v. *Western Pacific R. R. Co.*, 45 Cal. 323, at page 337: "It has been the uniform practice of the State from its organization, so far as we are advised, to permit the substitution to be made, or a suggestion of the death of the former party and satisfactory proof, on an *ex parte* motion, of the appointment and qualification of the administrator."

The same ruling was made in *Campbell* v. *West*, 93 Cal. 653. And the practice was emphasized by contrast with that in case of a transfer of interest otherwise than by death. In such case the court said when the proceedings were set in motion by the plaintiff or the person to whom the transfer is made, or by the defendant if for any reason he desires to avail himself of such transfer for any purpose, it must be made by supplemental complaint or answer.

We see no reason why the representative of a deceased party should not be brought in by the same procedure, whether the death of a party occur before or after service, and the language of the statute so expresses. The court would undoubtedly take care that ample notice was given, and nothing more can be necessary.

The cases in equity cited by petitioner contain some pertinent remarks as to when a suit may be considered as having been commenced, and in what stage of the suit it can be revived against the representatives of a deceased party. The cases cannot be said to be inapplicable to the statutes of States which, like California, have abolished the difference between legal and equitable forms of action, and which, under one form of action and the method of procedure of the State, intend to give, not less, but greater, remedial facilities, and, while accommodating the relief to the circumstances of the case, expedite the relief by freeing it from the delays and expense of the old procedure,

both in common law and equity, and to obtain the good in both by a simpler practice.

In *Gordon* v. *Tyler*, 53 Mich. 629, 631, the original defendants not having been served before their deaths, the court said, in passing on a motion to set aside the service and dismiss the bill: "The basis of this objection is that until a defendant has appeared the suit cannot be treated as having actually been commenced against him; so that if he dies before appearance it is as if he had never been in the case, and an original bill is necessary to reach his representatives. The citation from Daniells' Chancery Practice seems to favor that idea. But the authorities and practice have uniformly held that the filing of a bill is the commencement of suit for most purposes, and we can see no reason for adopting any exceptional rule in such cases as the present. An affidavit can always be made in a cause as soon as the bill is filed, and sometimes becomes necessary to support an order for the appearance of an absentee. A notice of *lis pendens* may always be filed at once, and it would lead to very serious mischief if a failure to serve process at once on a defendant could nullify the effect of such filing. For many purposes it is not always important whether a bill is a bill of revivor or an original bill in the nature of one. But for some purposes the difference is very material, and rights may be seriously jeopardized by holding a failure to get a defendant in before his death equivalent to a failure to implead him. The evident object of our statute is to hasten the proceedings by allowing a petition to stand in lieu of a bill of revivor, and we do not see any good reason for holding that a suit, if regarded as commenced for any substantial purpose, should not be regarded as commenced, so as to save all rights as against the estates of a deceased defendant, appearing or not appearing. No one's rights are injured by so holding, and important rights may be jeopardized by holding otherwise."

This ruling was reaffirmed in *Stevenson* v. *Krutz*, 57 N. W. Rep. 580.

In Maine, an executor of the deceased defendant may be brought in by bill of revival. In declaring the practice the court said, in *Hubbard* v. *Johnson*, 77 Maine, 139 : "The general

rule in equity is that, strictly speaking, there is no cause in court as against a defendant until his appearance.   2 Dan. Ch. (5th ed.) 1523.   But in this State, since a bill may be inserted in a writ of attachment, (Rev. Stat. c. 77, sec. 11,) as this was, and a suit is commenced when the writ is actually made with intention of service, (Rev. Stat. c. 81, sec. 95,) an executor may be brought in by a revivor, although no service has been made on the testator.   *Heard* v. *March*, 12 Cush. 580."

The same ruling was made in Massachusetts in *Heard* v. *March*, and while there was no opinion of the court, from the argument of counsel the ruling was apparently based on the same grounds as in *Hubbard* v. *Johnson, supra*, to wit, that an action was commenced on the day of the date of the writ, that being the process in chancery.

It was said in *Lyle* v. *Bradford*, 7 T. B. Monroe, 111, 116: "That the suing out process has at all times been held the commencement of an action or suit, and that as to the person against whom process has been issued there must necessarily be a pending suit from the date of the process, so as to abate and require a revival upon his death."

There is nothing in *Lewis* v. *Outlaw*, 1 Tenn. (1 Overton) 140, which opposes these views.   Indeed, it affirms them.   The court said : " Agreeably to the practice in the courts of law in England, all suits abated by the death of either party ; nor could they be revived by *scire facias*."   The court then proceeded to say that the practice of chancery in England was upon the death of either plaintiff or defendant to file a bill of revivor against the representatives of the deceased, and applying this practice to Kentucky under a statute which provided no abatement should occur by the death of either the plaintiff or defendant but might be " proceeded upon by application of the heirs, executors, administrators or assigns of either party," said : " It seems clear that all revivals, to comport with the principles of reason and the English practice, should be made by causing appropriate process to issue so as to make the representatives of the deceased parties in a legal manner.   To revive a dormant judgment a *scire facias* is necessary.   To revive in chancery the authorities show that a bill must be filed, and process issued thereon, to

which the representatives may make such answer as the nature of the case may require."

*Hyde* v. *Leavitt, Administrator of Griffin*, 2 Tyler, 170, cited by respondent's counsel, must be considered as peculiar to the practice in Vermont.

The statute of the State was very similar to section 955 of the Revised Statutes of the United States, (*supra*,) and it was held, reversing the lower court, that notwithstanding Griffin, the deceased, had been personally served with the writ, as it was made returnable June term, 1801, and as Griffin died before session day, his administrator could not be made a party under the statute. The ground of the decision seemed to be that the suit could not be considered as *pending* until it was entered in court. The contrary was held in *Clindenin* v. *Allen*, 4 N. H. 385. The same contention was made which was made in *Hyde* v. *Leavitt*. The court decided that, "as the term '*pending*' means nothing more than '*remaining* undecided,' an action may, without doubt, be considered as pending from the commencement." And we may say that *Hyde* v. *Leavitt* did not long remain law in Vermont. At their October sessions, 1804, the General Assembly amended the statute to make the commencement of the suit, in case of the death of either party, the same as to rights for and against executors as existed in a suit which was "*pending*," using this word, no doubt, to meet the ruling of the court.

However, the discussion to the extent we have carried it may not be necessary. Section 955, Rev. Stat., determines when the representative of a deceased party may be brought into an action, and that *scire facias* is the procedure whereby he may be brought in. And it is not confined to a case where a judgment has been obtained. It is a process of notice to the executor or administrator to come in, and if he should not come in, gives jurisdiction to the court to "render judgment against the estate of the deceased party, in the same manner as if the executor or administrator had voluntarily made himself a party." This is the language of the section. If doubt there can be of its construction, it is removed by the case of *Green* v. *Watkins*, 6 Wheaton, 260, and *Macker's Heirs* v. *Thomas*, 7 Wheaton, 530.

In *Green* v. *Watkins*, the court, passing on section 31 of the Judiciary Act of 1789, of which sections 955 and 956, Rev. Stat., are reproductions, pointed out the distinction between the death of parties before judgment and after judgment, and said : " In the former case all personal actions by the common law abate ; and it required the aid of some statute like that of the thirty-first section of the Judiciary Act of 1789, c. 20, to enable the action to be prosecuted by or against the personal representative of the deceased, when the cause of action survived."

The enactment of the section was to provide against the abatement of actions which would otherwise abate at common law, and we cannot confine its remedy to the cases where death occurs after judgment. In other words, confine its remedy to the cases where the common law already afforded a remedy. See also *McCoul* v. *Lekamp*, 2 Wheat. 111, and *Hyde* v. *Leavitt*, *supra*.

Except when considering the objection made here to the remedy by mandamus, we have treated the case as if O. P. Overton, the deceased party, was the sole defendant, and that the action necessarily abated unless there was a saving statute. But he was not the sole defendant, and the action did not abate at common law if the cause of action survived against the other defendant. We assume (the record does not enable us to determine absolutely) that it did, and the reason for bringing in the representatives of the deceased defendant is the stronger.

*We think, therefore, that the Circuit Court erred in setting aside the* scire facias *and the rule for mandamus is made absolute.*