**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| C. DWAYNE GILMORE, AKA Cary D. Gilmore,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>C. LOCKARD, C/O; C. LOPEZ, C/O; J. HIGHTOWER, C/O,<br>*Defendants-Appellees.* | No. 17-15636<br><br>D.C. No.<br>1:12-cv-00925-SAB<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Stanley Albert Boone, Magistrate Judge, Presiding

Argued and Submitted June 13, 2019
San Francisco, California

Filed August 28, 2019

Before: MARY M. SCHROEDER and MILAN D.
SMITH, JR., Circuit Judges, and JED S. RAKOFF,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

**Prisoner Civil Rights**

The panel reversed the district court's jury verdict in favor of defendant prison officials and remanded for further proceedings in an action brought by a California state prisoner pursuant to 42 U.S.C. § 1983 alleging that defendants used excessive force against him and delayed his access to medical assistance.

Plaintiff consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Nearly two years later, defendants declined consent, and the case was assigned to a district court judge. Thereafter, the magistrate judge originally assigned to this case retired, and another magistrate judge took over the case to address pretrial motions. Following an adverse ruling on a motion to compel, plaintiff filed a motion to withdraw his consent to magistrate judge jurisdiction. The magistrate judge denied plaintiff's motion, stating that, pursuant to 28 U.S.C. § 636(c)(4), a request to withdraw consent will be granted only upon a showing of good cause or extraordinary circumstances, and that disagreement with a ruling did not amount to good cause. Defendants subsequently consented to magistrate judge jurisdiction, almost four years after plaintiff's consent.

The panel held that a party need not satisfy the good cause or extraordinary circumstances standard provided in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 636(c)(4) in order to withdraw magistrate judge consent before all parties have consented. The panel held that because the magistrate judge erroneously required such a showing by plaintiff, and because under the circumstances his motion to withdraw consent should have been granted, the magistrate judge lacked jurisdiction to conduct the trial.

While plaintiff's case was pending, the Attorney General notified him that one of the defendants had died, but did not identify a personal representative for the defendant's estate. The district court, adopting the magistrate judge's recommendation, dismissed the deceased defendant from the action, along with plaintiff's Eighth Amendment deliberate indifference claim. The district court held that additional attempts to identify a representative would be futile due to Federal Rule of Civil Procedure 25(a)'s 90-day filing requirement.

The panel held that the magistrate judge erred by placing the burden on plaintiff to identify the deceased defendant's successor or personal representative. The panel concluded that Rule 25(a)'s 90-day window was not triggered, and therefore the panel reversed the dismissal of the deceased defendant, and reversed the dismissal of plaintiff's deliberate indifference to medical needs claim.

The panel stated that because it was reversing the jury verdict and remanding for further proceedings based on the magistrate judge's lack of jurisdiction, it was not necessary to consider plaintiff's evidentiary challenges in detail. However, for the guidance of the trial court on remand, the panel noted that the probative value of defendants' expert testimony about gangs to which plaintiff had no connection was minimal and was substantially outweighed by the danger of unfair prejudice.

**COUNSEL**

Douglas A, Smith (argued) and Maximillian Wolden Hirsch (argued), Los Angeles, California, for Plaintiff-Appellant.

Martha P. Ehlenbach (argued), Deputy Attorney General; Misha D. Igra, Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff Cary Dwayne Gilmore filed an action pursuant to 42 U.S.C. § 1983, alleging civil rights violations by various prison officials (together, Defendants) following an incident at Kern Valley State Prison (Kern Valley). A jury ultimately ruled against Gilmore, finding that Defendants did not use excessive force during the alleged incident.

We reverse on several grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Background

Gilmore alleged that on July 8, 2010, after an alarm sounded due to a disturbance created by two non-party inmates at Kern Valley, he was beginning to lie down—"prone out"—when Defendant Chad Lockard shot him with a sponge round in the right leg near his knee. Lockard then directed Defendant Cesar Lopez to check on Gilmore, who was on the ground after being shot. Gilmore claimed that

Lopez then began to pepper spray him. Defendant John Hightower also allegedly walked over and pepper sprayed Gilmore, until both he and Lopez had emptied their pepper spray cans. Afterwards, Defendant J.J. Torres handcuffed Gilmore and forced him to walk despite his knee injury. Gilmore alleged that Torres repeatedly forced him into obstacles such as door frames and walls, breaking his glasses and injuring his face. Torres purportedly laughed and said, "You gotta watch where you're going Gilmore!" Gilmore claimed that Torres then made him sit on hot asphalt for 27 minutes while he awaited medical attention, exacerbating the "burning" from the pepper spray. Finally, when Torres agreed to decontaminate Gilmore, he forced Gilmore to kneel while he sprayed him with water. Afterwards, Gilmore received medical attention for the gunshot wound.

## II. Procedural Background

Gilmore filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants used excessive force when responding to the incident at Kern Valley, and subsequently delayed his access to medical assistance. On March 2, 2017, after trial, a jury found in favor of Defendants.

### A. Motion to Withdraw Consent to Magistrate Judge Jurisdiction

On June 29, 2012, Gilmore consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Nearly two years later, on May 19, 2014, Defendants declined consent, and the case was then assigned to District Judge Lawrence J. O'Neill. The district court rejected Gilmore's objection to the reassignment, noting that "under § 636(c), if *all parties* do not consent to Magistrate Judge jurisdiction, a District Judge must be assigned as presiding judge." Thereafter, the magistrate judge originally assigned to this

case retired, and Magistrate Judge Stanley A. Boone took over the case, at this point in the case to address pretrial motions.

On October 19, 2015, following an adverse ruling on a motion to compel, Gilmore filed a motion to withdraw his consent to magistrate judge jurisdiction.  The magistrate judge stated that, pursuant to 28 U.S.C. § 636(c)(4), "a request to withdraw consent will be granted only upon a showing of good cause or extraordinary circumstances." Finding that Gilmore's disagreement with his ruling—Gilmore had suggested that the magistrate judge "ha[d] shown partiality for defendants" when ruling on the motion—did not amount to good cause, the magistrate judge denied Gilmore's motion.

On September 1, 2016, over four years after Gilmore consented to magistrate judge jurisdiction, Defendants finally gave their consent to Magistrate Judge Boone conducting all further proceedings.  Pursuant to 28 U.S.C. § 636(c), the case was thereafter assigned to Magistrate Judge Boone for all pretrial and trial proceedings.

**B.  Motion to Substitute Defendant Torres**

On February 24, 2014, the Deputy Attorney General (AG) representing Lopez and Hightower notified Gilmore that Torres had died, but did not identify a personal representative for Torres's estate.  The notice stated, "Counsel for Defendant Torres is informed that the Defendant has died."  Defendants now claim that the AG sent the notice in error because the AG represented *only* Lopez and Hightower at the time.  On March 5, 2014, Gilmore filed an "Opposition and Reply to Notice of Defendant's Death," which the magistrate judge construed as a motion to substitute parties.  The magistrate judge

denied this motion without prejudice, noting that "Plaintiff . . . is responsible for identifying and finding J.J. Torres' heirs or representatives."

Gilmore then filed a second substitution motion, asserting that counsel for Torres—the AG, as stated in the notice—was the representative of the estate, and requesting that the Deputy AG assigned to the case be served with his motion. The magistrate judge denied the motion, again asserting that Gilmore was responsible for providing the name and address of Torres's heir or representative. Gilmore then filed three additional substitution motions in an attempt to provide information about Mrs. Elizabeth Torres, Torres's widow, whom Gilmore claimed was Torres's heir. After the magistrate judge allowed limited discovery concerning the proper party to substitute, Gilmore offered as proof two obituaries indicating that Torres was survived by his wife, as well as copies of the white pages indicating Mrs. Torres's address. The magistrate judge again denied Gilmore's substitution motions because he found the evidence insufficient.

On November 20, 2014, Gilmore filed his final motion to substitute parties, which included a declaration in addition to the evidence previously submitted. Gilmore's declaration described a conversation between Gilmore's then-fiancée, Thalesha Denise Clay, and Mrs. Torres, wherein the latter confirmed that she was the administrator of Torres's estate. In further briefing, Gilmore disclosed that Clay had posed as a Department of Veterans Affairs employee in order to solicit answers from Mrs. Torres. The magistrate judge recommended denying Gilmore's motion with prejudice, noting that the declaration was inadmissible hearsay; that the remaining evidence was insufficient to identify Mrs. Torres as Torres's legal representative; and that further attempts to

identify a representative would be futile due to Federal Rule of Civil Procedure 25(a)'s 90-day filing requirement.

The district court adopted the magistrate judge's recommendation and dismissed Torres from the action, along with Gilmore's Eighth Amendment deliberate indifference claim.

## ANALYSIS

Gilmore argues that the magistrate judge committed several reversible errors over the course of the multi-year litigation. We address each in turn.

### I. Magistrate Judge Jurisdiction

Gilmore first argues that the magistrate judge lacked jurisdiction to conduct the trial pursuant to 28 U.S.C. § 636(c). Specifically, he contends that the magistrate judge erred by erroneously requiring that Gilmore show "good cause" in order to withdraw his consent.

We review de novo whether a magistrate judge had jurisdiction over a case. *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004). "[T]he federal litigant has a personal right, subject to exceptions in certain classes of cases, to demand Article III adjudication of a civil suit." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 541 (9th Cir. 1984). Like other fundamental rights, this right can be waived: "When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury . . . trial." Fed. R. Civ. P. 73(a).

Here, Gilmore originally consented to magistrate judge jurisdiction on June 29, 2012. Defendants then declined

magistrate judge jurisdiction on May 19, 2014.  Although Defendants later consented to magistrate judge jurisdiction, prior to that decision Gilmore sought to withdraw his consent, "believ[ing] that Magistrate Judge Stanley A. Boone ha[d] shown partiality for defendants and will not be an impartial magistrate."  The magistrate judge denied Gilmore's motion, citing § 636(c)(4) and its standard for withdrawing consent.  That statute states, "The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection."  28 U.S.C. § 636(c)(4).

Gilmore argues that because he sought to withdraw consent before *all parties* consented to magistrate judge jurisdiction, the civil matter was not yet properly before the magistrate judge, and so the "good cause" standard under § 636(c) does not apply.  Whether § 636(c)'s good cause standard applies prior to consent by all parties is a matter of first impression in our court.

The text of the statute suggests that Gilmore is correct, and that a showing of good cause is not required before all parties have consented.  Section 636(c) generally pertains to matters where all parties have consented to magistrate judge jurisdiction.  Subsection (c)(1) applies only "[u]pon the consent of the parties," and subsections (c)(2) and (c)(3) only relate to cases under subsection (c)(1).  *Id.* § 636(c)(1)–(3).  It follows then that subsection (c)(4) similarly applies only when the magistrate judge has jurisdiction over all proceedings, "[u]pon the consent of the parties."  By contrast, at the time the magistrate judge ruled on Gilmore's motion to withdraw, he only had authority pursuant to § 636(b), which applies where "a judge [] designate[s] a magistrate judge to hear and determine any pretrial matter

pending before the court." *Id.* § 636(b)(1)(A). Section 636(b) does *not* have a good cause or extraordinary circumstances requirement, and so Gilmore was not required to make such a showing when he moved to withdraw his consent.

Defendants claim that the magistrate judge retained jurisdiction pursuant to § 636(c) at the time of Gilmore's motion to withdraw, but this is inaccurate. A district court in our circuit explained succinctly the key distinction that applies in this case:

> There is a distinction between assignment of an action to a Magistrate Judge pursuant to 28 U.S.C. § 636(b) and reassignment of an action to a Magistrate Judge pursuant to 28 U.S.C. § 636(c) . . . . When an action is filed, it is assigned to a United States District Judge and a United States Magistrate Judge. If all the parties consent to Magistrate Judge jurisdiction pursuant to § 636(c), the action is reassigned by the United States District Judge assigned to the case to the Magistrate Judge assigned to the case, and the Magistrate Judge conducts all further proceeding[s], including trial. When plaintiff filled out the consent/decline form and checked the box marked "Consent," he was consenting pursuant to section 636(c). However, [at that point] plaintiff's consent did not result in reassignment of this action to a Magistrate Judge. Cases are reassigned to a Magistrate Judge *only* if all parties consent. If one or more parties decline Magistrate Judge jurisdiction, the District Judge will

> resolve all dispositive matters and conduct
> the trial, if there is one.

*Page v. California*, No. 1:06-cv-01409 LJO DLB PC, 2008 WL 3976933, at *1 (E.D. Cal. Aug. 20, 2008). Gilmore filed his motion to withdraw consent on October 19, 2015—*after* Defendants denied consent, *after* the case was assigned to District Judge Lawrence J. O'Neill, and *before* Defendants later consented to magistrate judge jurisdiction. Therefore, the magistrate judge did not have jurisdiction pursuant to § 636(c).[1]

We must necessarily consider the practical implications of our holding, one of which was highlighted by one of our sister circuits in *Carter v. Sea Land Services, Inc.*, 816 F.2d 1018 (5th Cir. 1987). There, the Fifth Circuit stated:

> [N]othing in the statute or the legislative history [] requires continuing expressions of consent before a magistrate can exercise authority under a valid reference. Nor will we accept the slippery-slope invitation to read into the statute a rule that would allow a party to express conditional consent to a reference, thereby obtaining what amounts to a free shot at a favorable outcome or a veto of an unfavorable outcome. Any such rule would allow the party to hold the power of consent over the magistrate like a sword of Damocles, ready to strike the reference

---

[1] Indeed, the fact that the magistrate judge submitted findings and recommendations to dismiss Torres as a defendant demonstrates that he did not have jurisdiction over all proceedings pursuant to § 636(c), but only an assignment under § 636(b).

> should the magistrate issue a ruling not quite
> to the party's liking.

*Id.* at 1020–21. Allowing a party to withdraw consent without utilizing the good cause standard could indeed allow a litigant to "shop" between a magistrate and a district judge. The facts of this case suggest that might have been precisely what Gilmore sought to do when he filed his motion to withdraw after receiving an unfavorable ruling.

Importantly, however, *Carter* is distinguishable. There, as in almost every case where a court reviews a ruling on a motion to withdraw consent,[2] *both parties* had consented to magistrate judge jurisdiction. *Id.* at 1020. The *Carter* court worried about a litigant seeking to withdraw consent after both parties had consented and the magistrate judge had made determinative rulings pursuant to § 636(c). Here, by contrast, Defendants had not yet consented, and the magistrate judge had not made rulings outside of limited pretrial motions as provided in § 636(b). The concern over forum shopping between a magistrate judge and an Article

---

[2] The cases upon which Defendants rely all involved circumstances where all parties had consented. *See Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993); *United States v. Neville*, 985 F.2d 992, 999–1000 (9th Cir. 1993). The only case supporting Defendants' position is *Espinoza v. Diaz*, No. 1:17-cv-00338-SAB (PC), 2018 WL 910520 (E.D. Cal. Feb. 14, 2018), *aff'd on other grounds*, 723 F. App'x 488 (9th Cir. 2018), where, coincidentally, Magistrate Judge Boone denied a plaintiff's motion to withdraw consent for failure to show good cause. *Id.* at *1. Importantly, the plaintiff in *Diaz* proceeded in front of an Article III judge, since the defendants continued to decline consent. *Id.* at *2. Thus, plaintiff never appealed Magistrate Judge Boone's denial of his motion to withdraw consent, and so the propriety of that ruling was never considered.

III judge is lessened if the magistrate judge can make only nondispositive pretrial rulings. **[3]**

But if the good cause or extraordinary circumstances standard is not required, then how should a court adjudicate a motion to withdraw consent in such cases? We conclude that this is a decision best left to the district court's discretion, and we note that the majority of courts have allowed such withdrawal in similar cases. *See, e.g.*, *Osotonu v. Ringler*, No. CIV S-10-2964 DAD P, 2011 WL 1047730, at \*5 (E.D. Cal. Mar. 18, 2011); *Bowman v. Schwarzenegger*, No. CIV S-07-2164 FCD KJM P, 2009 WL 799274, at \*1 (E.D. Cal. Mar. 23, 2009), *aff'd on other grounds*, 334 F. App'x 850 (9th Cir. 2009)) ("Because this action has not yet been reassigned to the [magistrate judge] for all purposes including trial, plaintiff may withdraw his consent without demonstrating good cause or extraordinary circumstances"); *Page*, 2008 WL 3976933, at \*2. We find these cases instructive. Gilmore, a pro se plaintiff, filed a timely motion to withdraw consent. There was no possible prejudice to Defendants at the time Gilmore sought withdrawal, nor was it inconvenient to the district court since the case had already been assigned to District Judge O'Neill. *Cf. United States v. Mortensen*, 860 F.2d 948, 950 (9th Cir. 1988) (holding, in the context of a misdemeanor trial before a magistrate judge pursuant to 18 U.S.C. § 3401(b), that "a withdrawal motion is timely when granting the motion would not unduly interfere with or delay the proceedings."). Gilmore filed the

---

**[3]** Moreover, Defendants can scarcely complain about Gilmore's judge-shopping, since Defendants sought to do the very same thing. When at last they consented to magistrate judge jurisdiction, they expressly limited that consent to Magistrate Judge Boone and purported to "reserve the right to consent or decline to consent to any subsequently assigned magistrate judge."

motion in response to an unfavorable pretrial ruling, but this alone does not compel a finding that Gilmore's consent is irrevocable for all later dispositive rulings.

In summary, a party need not satisfy the good cause or extraordinary circumstances standard provided in § 636(c)(4) in order to withdraw magistrate judge consent before all parties have consented. Because the magistrate judge erroneously required such a showing by Gilmore, and because under the circumstances his motion to withdraw consent should have been granted, we conclude that the magistrate judge lacked jurisdiction to conduct the trial.

## II. Substitution of Parties

The magistrate judge denied Gilmore's repeated motions to substitute Defendant Torres after his death, and dismissed Gilmore's deliberate indifference claim against Torres, noting that it would have been futile since the 90-day period to substitute under Rule 25(a)(1) had passed.

"The proper interpretation of Rule 25(a) is a question of law that we review de novo." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). "Factual findings relevant to the application of Rule 25(a) are reviewed for clear error." *Id.* Gilmore first argues that the notification of death was not properly served upon Torres's estate and, therefore, that Rule 25(a)(1)'s 90-day window was never triggered. Second, Gilmore contends that the magistrate judge impermissibly placed the burden on him, an incarcerated pro se plaintiff, to provide precise details of Torres's estate.

Before addressing Gilmore's arguments, Defendants suggest that Rule 25(a) has no application here because personal jurisdiction was never established over Torres, who died before service. Defendants identify a largely

unanswered question: whether substitution is available if a party dies *after* the suit was filed but *before* being served with process.

The purpose behind Rule 25(a) suggests that substitution remains available after filing and prior to service. Rule 25(a) seeks "to inform all interested persons of [a party's] death so that they may take appropriate action." *Id.* at 233 (quoting 3B Moore's Federal Practice ¶ 25.06[2] (2d ed. 1991)). Although service of summons must be completed before a federal court may exercise personal jurisdiction over a party, *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), service *after* substitution would still preserve a party's rights and claims, while ensuring that a court has personal jurisdiction over the new, proper party. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1951 (3d ed. 2007) ("If an action was commenced by the filing of a complaint but a party named in the complaint dies . . . before being served with process, substitution is available, but, as in any instance of substitution, process must be served on the new party to acquire in personam jurisdiction.").

Indeed, the Supreme Court inferred as much more than a century ago, finding "no reason why the representative of a deceased party should not be brought in by the same procedure, whether the death of a party occur before or after service," when interpreting a similar California state procedural rule. *Ex parte Connaway*, 178 U.S. 421, 431 (1900). Although our court has not yet extended *Connaway* to the *federal* rule, we observe that the decisions of various out-of-circuit courts imply that such an application is proper. *See, e.g.*, *Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971) ("[I]f no in personam jurisdiction had been acquired over the original party, then the substitution of a new party

under Rule 25(a)(1) . . . places the substituted party in the same position as the original party, i.e., a party to the action, but one who must be still served with process to secure in personam jurisdiction over him.") (quoting *Bertsch v. Canterbury*, 18 F.R.D. 23, 27 (S.D. Cal. 1955)); *Lummis v. Eighth Jud. Dist. Ct.*, 576 P.2d 272, 272–73 (Nev. 1978) ("Petitioners construe [Nevada's analogous Rule 25(a)] to require the deceased to be a 'party' jurisdictionally before the court. . . . Such a restrictive interpretation of the identical federal rule has been previously rejected.").[4] Relying on the purpose of Rule 25(a)(1), and finding these prior cases persuasive, we conclude that Rule 25 applies in this case, and proceed to the merits of Gilmore's appeal.

Gilmore challenges whether the 90-day substitution window was triggered when he received notice from the AG of Torres's death, and whether it was his burden to identify Torres's personal representative or successor. Rule 25(a) states:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by

---

[4] Despite Defendants' urging, we find *Goldlawr, Inc. v. Shubert*, 175 F. Supp. 793 (S.D.N.Y. 1959), unpersuasive. There, the court expressed doubt that "Rule 25(a)(1) . . . may be invoked to authorize substitution of the executors for a defendant who neither appeared nor was served with process." *Id.* at 797. But it did so in the context of whether personal jurisdiction over the original defendant even existed in the first place. *Id.* at 795–97. This context distinguishes *Goldlawr* from the case before us. We further find *Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969), inapposite since that suit was filed *after* the defendant's death, and Rule 25(a) presupposes that the deceased was already a party in the action prior to death.

> the decedent's successor or representative. If the motion is not made *within 90 days after service of a statement noting the death*, the action by or against the decedent must be dismissed.
>
> . . .
>
> A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 *and on nonparties* as provided in Rule 4. *A statement noting death must be served in the same manner.*

Fed. R. Civ. P. 25(a)(1), (3) (emphases added). Rule 25(a) thus "requires two affirmative steps in order to trigger the running of the 90 day period. First, a party must formally suggest the death of the party upon the record. Second, the suggesting party must serve other parties *and* nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Barlow*, 39 F.3d at 233 (emphasis added) (citations omitted). In *Barlow*, the defendants filed a suggestion of death after the plaintiff died, but did not serve it on the plaintiff's easily ascertainable estate. *Id.* at 232. We held that the suggestion of death did not trigger the 90-day window of Rule 25(a)(1), since the rule requires that the "statement noting death must be served in the same manner" as the motion to substitute—"on the parties . . . and on nonparties." Fed. R. Civ. P. 25(a)(1), (3).

In *Barlow*, we did not reach the question of whether "the suggestion of death [must] be served upon the nonparty successors or representatives of the estate when the appropriate persons could not be ascertained at the time the

suggestion of death was made."  39 F.3d at 234.  Here, both parties appear to agree that the successors or representatives of Torres's estate were not easily ascertainable.   But although *Barlow* did not answer this key question, other circuits have suggested that nonparty successors or representatives of the deceased party must be personally served—or, at a minimum, identified—in order to trigger the 90-day period.  *See Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985) ("Rule 25(a)(1) directs that both parties and appropriate nonparties be served with the suggestion of death to commence the 90-day substitution period, for the rule seeks 'to assure the parties to the action and other concerned persons of notice of the death so that they may take appropriate action to make substitution for the deceased party.'") (quoting 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.06 (2d ed. 1982)); *Rende v. Kay*, 415 F.2d 983, 985–86 (D.C. Cir. 1969) ("[T]he Rule, as amended, cannot fairly be construed . . . to make [decedent's counsel's] suggestion of death operative to trigger the 90-day period even though he was neither a successor nor representative of the deceased, and gave no indication of what person was available to be named in substitution as a representative of the deceased.  [Such a] construction would open the door to a tactical maneuver to place upon the plaintiff the burden of locating the representative of the estate within 90 days." (footnote omitted)); *but see Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998) ("The rule does not require that the statement identify the successor or legal representative; it merely requires that the statement of death be served on the involved parties.").

In light of Rule 25(a)'s function, these cases attempted, with varying results, to balance the importance of notice to both parties and nonparties—which ensures that rights and

causes of action are protected—with the burden of providing such notice.  In *Barlow* and *Fariss*, the successors or representatives were easily ascertainable when the respective suggestions of death were provided, and so the courts found it appropriate to require such notice in order to trigger the 90-day period.  In *Rende*, the D.C. Circuit was particularly concerned with placing the burden on a plaintiff to identify the defendant's successor or representative after defendant's counsel filed a suggestion of death.  The D.C. Circuit ultimately held that the suggestion of death must identify the representative or successor before the 90-day period is triggered.  415 F.2d at 985–86.  Finally, in *Unicorn Tales*, the Second Circuit disagreed with the D.C. Circuit and found a suggestion of death sufficient to trigger the 90-day window, even if no successor or representative was identified, because Rule 6(b) allows time extensions for a party to discover such individuals.  138 F.3d at 470.

Finding *Rende* to be better reasoned, we hold that the AG's notice of death did not trigger the 90-day window.  The AG neither served notice to any nonparties, nor identified such nonparties.  Either circumstance would have put Gilmore on notice as to Torres's successor or personal representative, information that he ultimately struggled to obtain despite use of limited discovery and repeated motions.[5]  Whether or not the AG was actually Torres's counsel, she was significantly better positioned than Gilmore to ascertain Torres's successor since Defendants Lopez and Hightower were indisputably her clients, and given her existing relationship with the California Department of Corrections and Rehabilitation (CDCR). Shifting the burden to Gilmore to identify Torres's successor

---

[5] These repeated motions are a fairly clear indication that Rule 6(b) extensions would not have assisted Gilmore in obtaining the information.

or representative would defeat the purpose of Rule 25(a): to preserve parties' rights and causes of action when a party dies. As the D.C. Circuit correctly observed in *Rende*, this purpose would not be served by allowing Defendants to place Gilmore at a tactical disadvantage, struggling to identify Torres's successors or personal representatives within the 90-day deadline.

Furthermore, nothing in *Barlow* suggests that where the party filing the suggestion of death has not yet confirmed the proper party for substitution, the burden of finding and serving the substituted party should necessarily shift to the other party. Instead, *Barlow* is better understood as interpreting the 90-day rule judiciously: where a party files a suggestion of death, it must do so in a manner that puts all interested parties and nonparties on notice of their claims in order to trigger the 90-day window. In that case, we required defense counsel to serve plaintiff's easily identifiable estate. Here, we require, at a minimum, identification of Torres's successor or personal representative by Defendants, given that they were much better suited than Gilmore to identify the proper parties.

Accordingly, because we hold that the magistrate judge erred by placing the burden on Gilmore to identify Torres's successor or personal representative, we conclude that Rule 25(a)'s 90-day window was not triggered. We therefore reverse dismissal of Torres as a defendant, and we reverse the dismissal of Gilmore's deliberate indifference claim.

Defendants argue that substitution of Mrs. Torres at this stage, if she is indeed the proper party, would be futile due to the statute of limitations, as well as unduly burdensome. But substitution would not be futile. Defendants misunderstand the effect of a Rule 25(a) substitution—Mrs. Torres would not be a "new" party. Instead, the claim

against Torres would survive because it was timely filed before his death, and thus would relate back to the date of the suit's filing. *See Flores v. City of Westminster*, 873 F.3d 739, 761 (9th Cir. 2017). Defendants' argument that substitution would be unduly burdensome might be persuasive, but it is not one that we are able to adjudicate. It is instead a matter for the district court to consider on remand.

## III. Expert Testimonies

Because we reverse the jury verdict and remand for further proceedings based on the magistrate judge's lack of jurisdiction, we need not consider Gilmore's evidentiary challenges in detail. However, "for the guidance of the trial court on remand," *United States v. Mayans*, 17 F.3d 1174, 1184 (9th Cir. 1994), we note that Officer Jalani Hunter was permitted to offer testimony whose "probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Fed. R. Evid. 403. While Hunter's testimony about Gilmore's alleged gang affiliation was largely unobjectionable, his testimony about gangs to which Gilmore had no connection whatsoever—including organizations such as the Aryan Brotherhood and the Mexican Mafia which have historic and public notoriety—was of "marginal, if any, probative value." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016). Still more inflammatory was Hunter's statement to the jury that "the local streets that you guys live on, these hits that are murders or whatever that's taking place out on the street . . . [are] taking place because of members housed in the [CDCR]." Testimony of unrelated gang activity *outside* the prison walls provided no useful information in this case involving an altercation *within* prison walls. Given that "[o]ur cases make it clear that evidence relating to gang

involvement will almost always be prejudicial," *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004), the minimal probative value of Hunter's testimony is easily outweighed by the tremendous risk of unfair prejudice to Gilmore and so it should be excluded if the case is retried.

## CONCLUSION

We reverse the jury verdict, finding that the magistrate judge did not have jurisdiction over trial proceedings pursuant to § 636(c). We further reverse dismissal of Torres as a Defendant, finding the 90-day window under Rule 25(a) was never triggered, and we reverse the dismissal of Gilmore's deliberate indifference claim. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**